ROBERTSON v. HAYES.

1. Bills and Notes—Indorsement in Blank—Notice.

　　In action against indorser on promissory note, finding of jury that plaintiff knew that said note had been delivered by indorser in blank to maker, *held*, justified by record, although testimony was controverted.

2. Same—Trial—Instructions—Appeal and Error.

　　In action against indorser on promissory note, in which circumstances under which said note was delivered and what was said in telephone conversation between plaintiff and defendant were material, inadvertent reference, in court's charge, to defendant when plaintiff was meant, and reference to "legal-

ity'' and ''illegality'' of note rather than to its being valid or invalid under said circumstances, *held,* not prejudicial error, in view of clear and concise instruction on issue involved, although said reference was unfortunate.

3. TRIAL—COUNSEL'S DUTY TO CALL COURT'S ATTENTION TO INADVERTENT ERROR.

It was counsel's duty to call court's attention to inadvertent reference in charge to defendant when clearly plaintiff was meant, and if counsel failed to notice it, Supreme Court may not assume that jury was misled thereby.

4. BILLS AND NOTES—CANADIAN BILLS OF EXCHANGE ACT—USE OF WORDS ''LEGAL'' AND ''ILLEGALITY.''

In action on promissory note, that terms ''legal'' and ''illegality,'' appearing once in portion of Canadian bills of exchange act, read to jury by court, were used in sense technically different from that in which same terms were used in other portions of charge, *held,* not to result in prejudicial error, where, in sections of act read, reference was made to negotiable instruments as being ''enforceable,'' ''valid,'' and ''effectual,'' since opposite of these terms would differ but slightly in minds of lay jurymen from words ''legal'' or ''illegal'' as used by trial judge.

5. SAME—HOLDER IN DUE COURSE—BURDEN OF PROOF.

In action against indorser on promissory note given in Canada, involving construction of Canadian bills of exchange act, court properly instructed jury that it was its duty to determine whether plaintiff was holder in due course, and in connection therewith properly placed burden on defendant of proving that plaintiff, who made *prima facie* case, was not holder in due course.

6. EVIDENCE—ADMISSIBILITY OF EXHIBITS.

Where plaintiff's cross-examination of defendant disclosed that certain exhibits offered in evidence, composed of letters, telegrams, etc., were not relevant to issue involved, there was no error in excluding them.

7. NEW TRIAL—PREPONDERANCE OF EVIDENCE.

Where verdict in favor of defendant was not contrary to preponderance of evidence, trial court properly denied plaintiff's motion for new trial.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted October 26, 1932. (Docket No. 97, Calendar No. 36,399.) Decided January 3, 1933.

Assumpsit by James M. Robertson against H. Jay Hayes on a promissory note. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Foster & Cameron,* for plaintiff.

*Shields, Silsbee, Ballard & Jennings,* for defendant.

NORTH, J. In the circuit court verdict and judgment were against plaintiff in his suit on the following promissory note:

"$20,000          Montreal, Que., January 9, 1930.

"Sixty days after date I promise to pay to the order of James M. Robertson, twenty thousand 00/100 dollars.

"Payable at Royal Bank of Canada, Montreal, Que.

"Value received with interest.

                    "JAMES S. FULLER."

(Indorsed on back of above note) "H. JAY HAYES."

Plaintiff has appealed; and the reasons assigned in support of the appeal are that there was error in the charge to the jury and in excluding certain testimony, that the verdict was contrary to the preponderance of evidence, and plaintiff's motion for a new trial was erroneously denied.

In January, 1930, plaintiff met a Mr. James S. Fuller in the city of Montreal, Canada. The two were introduced by a Mr. Barclay who was associated with or was an assistant to Mr. Fuller in the latter's activities. At this time Mr. Fuller

seems to have been working in connection with the
defendant in financing the Hayes Industries, an
enterprise in which the defendant was interested.
The defendant, Mr. Hayes, was a man of means and
rather extensively interested in industrial activities.
In December, 1929, Hayes gave Fuller 10 blank
notes each bearing the former's indorsement on the
back thereof. Plaintiff Robertson was a consulting
engineer who had specialized in hydro-electric de-
velopment. At the time of his meeting Fuller, the
latter was interested in such a project located in
Mexico. He was desirous of engaging the services
of Robertson in making a survey of the possibilities
of developing this Mexican enterprise; and it was
agreed that for such services plaintiff should re-
ceive $10,000. Fuller was in need of funds to be
used in connection with the undertaking, and it was
arranged between them that Fuller would give Rob-
ertson a note for $20,000 indorsed by Hayes; and
to enable Fuller to obtain funds, plaintiff would give
back to him a note for $10,000. Plaintiff's note to
Fuller was discounted by the latter. Both Fuller
and Hayes were strangers to plaintiff, and while
negotiations were in progress plaintiff made inquiry
of the Royal Bank of Canada concerning Hayes,
and was informed he was a "man of substance."
Further, plaintiff claims that, in an effort to verify
Fuller's right to use the note bearing the indorse-
ment of Mr. Hayes, the latter was called by long-
distance telephone in New York city. The outcome
of this case depends upon the controverted issue
as to the conversation which passed between these
two men at that time. Plaintiff's version is that
Mr. Barclay (probably because of his association
with Fuller) got Mr. Hayes on the telephone and
after talking with him in regard to Fuller's right

to use the note bearing Mr. Hayes' indorsement in connection with a power project and after receiving the reply of Mr. Hayes, the latter was requested to repeat his statement to plaintiff; that he did so, stated that the note was all right, and made no mention of any limitation of Fuller's authority to use the note. Plaintiff's testimony to this effect is corroborated by that of Barclay. On the other hand, Mr. Hayes testified that he expressly told Robertson the notes were to be used only for the purpose of raising money to be used incident to the Hayes Industries; and he denied that any mention whatever was made to him of the Mexican hydro-electric power project.

Mr. Fuller was not produced as a witness at the trial of this case. The record contains testimony on both sides of the question as to whether plaintiff before receiving the same knew that the $20,000 note had been delivered in blank to Fuller; and that it was filled in and executed by the latter incident to his negotiations with plaintiff. But in view of the verdict in favor of defendant, it is fair to conclude that the jury found plaintiff possessed full knowledge of the actual facts prior to the time the note was executed and delivered by Fuller. Surely there is sufficient testimony in the record to justify such a determination.

Appellant complains that in the charge to the jury prejudicial error was committed by the circuit judge in that repeatedly in the charge he referred to the "legality" or "illegality" of the note, rather than to its being invalid because of the circumstances surrounding its execution and delivery, so that it was unenforceable in the hands of plaintiff. Also error is asserted because the court inadvertently referred to Mr. Hayes instead of Mr. Robert-

son in charging the jury relative to the telephone communication as follows:

" 'What was that conversation?' Mr. Robertson said it was one thing and Mr. Hayes said it was another. If the conversation was as *Mr. Hayes* tells you it was, and if the note was filled in before the conversation, the note then becomes a legal note. You would then only have to determine whether Mr. Robertson was a holder in due course. But if, before the paper had been filled in, in the form of a note, Mr. Robertson had a conversation with Mr. Hayes and the conversation was such as Mr. Hayes detailed, then no one had a right to fill that note in, because there is such a radical difference between the statement Mr. Hayes said he made and the statement which Mr. Robertson said he made."

In the foregoing portion of the charge the italicized reference to Mr. Hayes is obviously erroneous, and it was intended to there refer to Mr. Robertson. While this, as perhaps the repeated use of the expressions "legal" or "illegality" was unfortunate, we think neither constituted prejudicial error, especially in view of the fact that the trial court clearly and concisely pointed out to the jury that their decision mainly hinged upon the determination of whether plaintiff or defendant was right as to what was said in the telephone conversation between the two. The clearness with which this issue was submitted renders rather insignificant the mistaken reference by the court to Mr. Hayes when he should have referred to Mr. Robertson. If appellant's counsel observed this slip of the trial court when charging the jury, surely they should have called his attention to the same in order that it might be corrected. On the other hand, if counsel did not notice the inadvertent mistake, it would

seem rather far fetched to assume that the members
of the jury heard and literally followed the charge
and were misled thereby.

While it hardly seems necessary, it may be added
that since this transaction was consummated in
Canada, the pertinent provisions of the Canadian
bills of exchange act (1 R. S. Canada 1927, chap. 16)
are applicable. The court so charged the jury, and
in that connection read portions of the act. In the
portions read the words "legal" and "illegality"
each appear once and these terms are used in a sense
which is technically different than that in which the
same terms were used in other portions of the
charge. But in the sections of the act read to the
jury reference is made to negotiable instruments as
being "enforceable," "valid," and "effectual."
The opposite of these terms would be "unenforce-
able," "invalid," and "ineffectual." To the mind
of lay jurymen such terms convey meanings differ-
ing but slightly, if at all, from the words "legal"
or "illegality" as used by the trial judge. As noted
above, we think prejudicial error did not result.

Appellant also complains of the following por-
tion of the charge:

"If you determine that the note is legal under the
evidence and the law as I have given it to you, and
was filled in properly, *then you will come to the
question as to whether Mr. Robertson was a holder
in due course.*"

The gist of appellant's claim is that by this in-
struction the court required the jury to find not only
that so far as plaintiff knew or had notice Fuller
filled in the blank note in a manner and for a pur-
pose authorized by defendant, but that the jury must
further find that plaintiff was a holder of the note
in due course. Even so construed, the charge was
not erroneous. The Canadian bills of exchange act

provides that to be a holder in due course one must have accepted the instrument "in good faith and for value." (1 R. S. Canada 1927, chap. 16, § 56.) It was not enough that plaintiff believed Fuller had authority to complete and deliver the note in furtherance of the hydro-electric power project. It was also necessary that plaintiff be a holder in good faith for a valuable consideration incident to the project. The circuit judge charged the jury that plaintiff made a *prima facie* case by producing the note in evidence, and that the burden of showing that it was not enforceable against defendant was upon the defendant. Thus the burden of proving defendant's claim that plaintiff was not a holder in due course was placed by the court upon the defendant and the issue properly submitted to the jury.

Exhibits 57 to 64 inclusive were offered in evidence by plaintiff incident to the cross-examination of the defendant. They were excluded, and of this appellant complains. These exhibits were composed of letters, telegrams, a promissory note, and other written instruments. Touching the admissibility of these exhibits, appellant states in his brief:

"One of the critical issues of fact in this case had to do with the limitations which Hayes claimed he placed upon Fuller's authority to use the note. * * *

"In view of Hayes' testimony that he did not authorize the use of the note in suit in connection with any power deal and was not interested in any power deal, plaintiff should have been given the right to introduce these exhibits and cross-examine defendant with regard to them. These exhibits * * * would have tended to impeach Hayes' testimony as to Fuller's authority and as to the mutual deals in which they were interested."

First it should be noted that plaintiff was allowed to cross-examine defendant concerning these exhibits. It was this cross-examination that disclosed the irrelevancy of most, if not all, of these exhibits; and this testimony of defendant was not disputed. We have found nothing in any of these exhibits which contradicts defendant's testimony as to the purpose for which this blank note and others were indorsed by him and placed in Fuller's hands. It is stated by appellant that defendant had denied that he was interested in either the Mexican power project or in another one in Canada referred to as the "Baunharnois power deal;" and that some of these exhibits tended to impeach defendant in these particulars. The difficulty is that both on their face, and especially in the light of the testimony explaining them, these exhibits present nothing that tends to impeach defendant as to any material issue. The gist of this case was the controversy as to whether plaintiff was a holder in due course of the $20,000 note in suit, and in this connection it was of importance to determine whether defendant was interested with Fuller in the Mexican power project. The excluded exhibits contain nothing that was relevant to either of these questions. When plaintiff's counsel cross-examined defendant as to whether he was interested with Fuller in other enterprises the inquiry was of collateral matters, and as to such matters defendant could not be impeached. *Shannon* v. *Township of Jamestown,* 251 Mich. 597. There was no error in the rulings excluding these exhibits.

We have given consideration to appellant's contention that the verdict was contrary to the preponderance of evidence, and that the court was in error in denying plaintiff's motion for a new trial.

Neither of these contentions is sustained by the record.

Judgment of the circuit court is affirmed, with costs to appellee.

McDONALD, C. J., and CLARK, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.