STEGER *v.* BLANCHARD.

AUTOMOBILES—PEDESTRIANS—DISMISSAL OF SCHOOL—EQUALLY DI-
VIDED COURT.

Judgment for defendant, whose westbound car was driven by a
16-year-old driver, notwithstanding verdict for plaintiff, a
southbound pedestrian who was injured while crossing a
43–1/2-foot street to school shortly after classes had been
dismissed for the day and while hundreds of elementary and
secondary pupils were entering cars and eastbound buses just
west of crest of hill, is affirmed by an equally divided court.

Appeal from Lenawee; Martin (Rex B.), J. Sub-
mitted June 12, 1957. (Docket No. 8, Calendar No.
47,202.) Decided December 24, 1957. Rehearing
granted March 4, 1958. See 353 Mich 140.

Case by Maude L. Steger and Hartford Accident
& Indemnity Company, a foreign corporation, sub-
rogee, against L. E. Blanchard for damages for per-
sonal injuries sustained when plaintiff pedestrian
was struck by automobile while crossing street in
front of school shortly after classes were dismissed
for the day. Judgment for defendant *non obstante
veredicto.* Plaintiffs appeal. Affirmed by an equally
divided court.

*Francis T. Ready* and *Baker, Hammond & Baker,*
for plaintiffs.

*Baldwin & Walker,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
3 Am Jur, Appeal and Error § 1160.

Maude L. Steger, a veteran schoolteacher aged 63 at the time, was teaching at the Lincoln (grade) school, in the city of Hudson, on February 29, 1952. She had been summoned to a late afternoon teachers' meeting at the Washington school in Hudson, and was on her way to the meeting when presently-considered events took place.

The Washington school is situated on the south side of east-west Washington street, just west of intersecting Cobb street.* It is in the southwesterly portion of Hudson, some 3 blocks south and some distance west of Hudson's main street and business district. The greater portion of the city lies east and north of the school and this probably accounts for the fact that most of the vehicular traffic described in the record, including the school buses, was headed east at the time.

The main school entrance is situated near and slightly west of the approximate crest of a hill crossed by Washington street. In order that the reader may understand the nature of the slope, from the east toward such crest (up which the defendant's car travelled toward Mrs. Steger), we note that there is a rise of 27 feet, in a distance of 480 feet, directly east of the summit.

Washington street is paved and measures 32 feet from curb to curb. In front of the school premises the pavement has been made wider to provide a strip of parking space for school buses. Students enter and leave the buses while they are parked, end to end, on this strip. Such widening is confined to the south side of the street and it results in a paved street width, in front of the school, of 43-1/2 feet (measured from curb to curb).

---

* Cobb street extends from south to north and ends at Washington. The photographs introduced in evidence show that it is a narrow and unpaved side street.

Mrs. Steger was driven by another teacher—west on Washington—to a point where she alighted at the north curb of Washington, substantially opposite the main entrance to the school. The driver proceeded onward to the west—presumably to park the car—and Mrs. Steger prepared to cross the street, from north to south, toward the mentioned entrance. She was carrying a bundle of school papers at the time, and stood motionless for an appreciable period at or near the north curb before starting across.

We turn at this point to the fact of then-existent congestion of the street as shown in the record. Hundreds of elementary as well as high school students are taught at the school, and they had been let out at the usual hour immediately prior to Mrs. Steger's arrival at the north curb. Students of all ages were filling the street for departure on foot, by car and by school bus, and the record-picture is typical of the letting out of a large school at end of the day. One or two of the buses had already loaded and departed. Others, parked in the widened portion of the street in front of the school, were being loaded with additional students. More students were entering and leaving in cars. These cars were parked or stopped, principally on the south side of the street facing east and, as students entered them, were moving out into the street and proceeding east past buses being loaded.

These traffic conditions were described by Mrs. Steger (there seems to be no dispute of her testimony in such regard) as follows:

"*Q.* Will you describe to the jury what was going on, if anything, in front of the school at that time?

"*A.* Well, if I may use the word I usually use for it, it is a mad house.

"*Q.* I don't want you to—

"*A.* (Interrupting): It is full of cars; full of people; full of buses.

"*Q*. Children getting out of school?

"*A*. Yes, everybody, even the younger children have to wait for the buses until that time, even though the school is out earlier, they have to wait.

"*Q*. If you were to estimate the number of people out there, do you have any judgment as to the number of students around there in the yard, on the sidewalk and vicinity at the time you arrived there?

"*A*. Well, I couldn't say. There are just lots of them because all the different grades were coming. A few of the buses had gone, others were loading, cars were loading. Lots of children coming down the walk. I don't know how many children there are over there. Probably close to 800.

"*Q*. Were any people or children crossing the street in that area at that time?

"*A*. Yes.

"*Q*. You say children?

"*A*. Yes, children getting into cars."

As Mrs. Steger stood at the north curb she was a short distance west of the crest of the mentioned hill and below it. She was not exactly a tall person. According to a witness–engineer's measurement, her height from soles of shoes to eye level was 4.95 feet. Her view, of traffic approaching from the east, was thus curtailed by the crest of the hill and her lack of height. It was shown nevertheless that she could have seen a car approaching from the east, standing where she was at the time, when it was approximately 300 feet away. It was not shown, of course, how much of an approaching car—considering it vertically—was visible at such distance, but it is clear from the record that some upper portion thereof at least would have come into her line of vision had she been looking east at the precise time.

Mrs. Steger was seen to be standing at the north curb, looking east, by several high school students who were leaving in cars from the opposite side of the street. She testified to having looked to the east,

when standing at or near the north curb, and to the absence of oncoming traffic within such easterly vision at the time. She testified, on cross-examination:

"*Q.* Isn't it just possible, Mrs. Steger, that you didn't look enough to your left to see the Blanchard car as it came?

"*A.* I looked and I saw no car. There was no car there when I looked, and I did look."

Having looked according to this testimony, Mrs. Steger started to walk across the street toward the school entrance. She did not look again to her left and did not see the defendant's car at any time. She testified to having looked to the right, from which direction most of the then-moving traffic was approaching, and that she took some 5 steps prior to being struck, as hereinafter described, by the defendant's automobile. We should add that, in the few seconds while Mrs. Steger was walking south from the curb, there was nothing to obstruct view of the defendant's approaching car by Mrs. Steger, and nothing to obstruct view of Mrs. Steger by the approaching driver.

The defendant's automobile, driven in a westerly direction on Washington by his 16-year-old daughter, Anne Blanchard, approached and came over the crest of the hill either at the time Mrs. Steger was looking to the east, or immediately thereafter when Mrs. Steger turned her gaze ahead and to the west. It came forward in a straight line, on the northerly side of the street at an estimated speed of 30 miles per hour, without sounding of horn or swerving, until the right-front corner thereof struck Mrs. Steger. The brakes do not appear to have been applied until the instant of impact.

This suit, for personal injuries and damages suffered in foregoing circumstances, was commenced against the defendant car owner on February 11,

1955, by Mrs. Steger and the Hartford Accident & Indemnity Co., the latter being the school district's compensation insurer. Jury trial resulted in a verdict for plaintiffs in the sum of $34,729.25. Defendant, having theretofore moved for an instructed verdict on assigned ground of contributory negligence, duly moved on same ground for judgment notwithstanding the jury's verdict. The latter motion was granted by the trial judge and judgment for defendant was thereupon entered. Plaintiffs appeal. Defendant does not cross-appeal.

BLACK, J. (after stating the facts, for reversal). Our text was written by Mr. Justice COOLEY. We affirmed it most recently in Normand v. Thomas Theatre Corporation, 349 Mich 50, 59, as follows:

"As we have previously seen (Clark v. Shefferly, 346 Mich 332) the question of contributory negligence is usually judged, not alone by what the plaintiff did or did not do, but also by the conjoining facts pertaining to what in the way of legal duty the plaintiff had a right to expect of the defendant."

The question before us, determinable as it should be from favorable-to-plaintiff view of the proof and legitimate inference from proof, is whether this elderly schoolteacher's failure to look again (and to act with reference to what she would have seen had she looked), after having assured herself that the way to her left was clear of oncoming traffic for approximately 300 feet, constituted contributory negligence as a matter of law. To determine it, we turn immediately to consideration of such duty or duties as were owing in the disclosed circumstances by defendant's daughter. We do this since the prudence of the party injured—Mrs. Steger—must be estimated on motion for directed verdict in view of what she had a right to expect from the defendant's said

daughter (*Detroit & Milwaukee R. Co.* v. *Van Stein-burg,* 17 Mich 99, 119).

*Zylstra* v. *Graham,* 244 Mich 319, sets the temper and gives us the tone of Miss Blanchard's rather manifest duties as the situation ahead unfolded before her. As the car she was driving came up over the crest of the hill she saw or should have seen the exuberant milling and movement of a school just dismissed; the multiple use of buses and cars for carriage of students from school to home or soda fountain; 1 or 2 fully loaded school buses, plus student filled cars, coming toward her and moving out into the street so that her own avenue of approach and passage was necessarily reduced in maneuverable width; children crossing the street in front of her from left to right and, finally, a schoolteacher she had known for some years crossing or starting to cross the intended path of her car from right to left. If Mrs. Steger should have discovered approach of the car in these circumstances—this as we shall see became a question of fact;—so also was the jury entitled to find that Miss Blanchard should have timely discovered and acted with regard for the scene before her—termed in *Zylstra* (p 324) "the crowded condition of the thoroughfare as to both vehicles and people."

Miss Blanchard's obligation at that moment, owing to all pedestrians and motorists temporarily occupied in utilizing most of the street ahead, transcended in degree Mrs. Steger's duty of continued watchfulness to the east. This is so because Mrs. Steger was obligated to guard herself against comparably more imminent danger to her right than to her left; whereas Miss Blanchard's duty of specially watchful vigilance was, as a sailor would say, "dead ahead." There was no cross or intersectional traffic to divert Miss Blanchard's attention and she was operating—then existent circumstances con-

sidered—what is known in our books as a "dangerous instrumentality." It then and there became incumbent on her to maintain such lookout to the fore, and to bring the car under such control, as to permit it to be "stopped on the shortest possible notice."*

On this record the jury was entitled to find that Miss Blanchard breached the aforesaid onus of responsibility by driving into the area of congested activity at an excessive rate of speed; by failing to maintain a proper lookout ahead when the visible situation fairly called therefor; by failing to timely discover the presence of an elderly person walking forward into the intended path of her car, and by failing to act with regard to such discovery; by failing to sound any warning whatever of the car's approach to those who were then visibly using the paved street area in numbers, and by failing to attempt stopping of the car until the approximate time Mrs. Steger was struck.

It is noted at this point that Miss Blanchard was not sworn during the trial and that her absence from the witness stand is unexplained in the record. Her father, the defendant, was the only defense witness. He was not riding with his daughter at the time and knew nothing of the so-called accident facts. Consequently, we are given no explanation or reason for the driver's causative acts and omissions in circumstances fairly calling for excusive facts (if there were such); which facts of necessity would be known only to the absent witness. We must, then, in the course of test of this motion for instructed verdict, rule that Miss Blanchard was guilty of negligence

---

* "Where a car is being driven in the immediate vicinity of a schoolhouse, particularly at a time when school is being dismissed, the driver of the car must use special caution for the protection of children in that vicinity; under these circumstances it is his duty to bring his car under such control that it can be stopped on the shortest possible notice." (*Stevenson* v. *Sarfert*, 310 Pa 458, 462 [165 A 225, 226].)

which was actionable if Mrs. Steger was free from contributory fault.

Was Mrs. Steger, once she had satisfied herself that no car was approaching from her left within the testified distance of fair visibility, reasonably entitled thereafter to expect that Miss Blanchard would execute in some degree the duties we have just considered? The answer, so far as this motion for an instructed verdict is concerned, must be an unequivocal yes. It was for the jury to say, and not the trial judge, whether a person of reasonable prudence would have conducted himself (or herself) as Mrs. Steger did in the described situation and, so far as concerns our assuming to pronounce judgment on her conduct as a matter of law, we decline to do so for the same reason (consistent with *Van Steinburg* and cases following its rule) as was given by way of utilized presumption in *Zylstra.* In each case—*Zylstra* and now Steger—the pedestrian had a right to assume that any person, operating a motor vehicle in same or similar circumstances, would so regulate the speed thereof, and attend to such vigilant control thereof, as to constitute fair performance of the aforesaid duties. Such right of assumption, qualified though it may be, leaves in this case a problem the solution of which cannot "be one upon which the law can pronounce a definite sentence;" one we must leave "to the sifting and determination of a jury." (Quotations from *Van Steinburg*, p 119 of report.)*

There is some point, depending on given circumstances, where the crossing pedestrian may—and sometimes should—transfer his gaze of vigilance from one direction to another, having first satisfied

---

* The reader interested in further pursuit of this legal right of assumption—that another will perform his legal duty—may read with profit Mr. Justice Cooley's application thereof to the facts in an old yet common type of pedestrian case (*Van Steinburg*, pp 123, 124 of report).

himself that no danger may, within reason, be immediately anticipated from the direction of initial view. So, and in this case, reasonable men might well find that Mrs. Steger's testified direction of gaze, as she started and continued to walk toward the school, was prompted by fair judgment—based on her having previously scanned the street to the east—that the imminence of possible peril to her right outweighed the chances of harm to her left.

This Court is fully mindful of the cases defendant relies upon (headed by *Malone* v. *Vining,* 313 Mich 315; and *Ludwick* v. *Hendricks,* 335 Mich 633) and is aware of its rulings that a pedestrian in specific circumstances must "look and keep on looking." The trouble with citation of such authorities, and with their attempted fitment to the case at bar, lies in the false assumption that a generally applicable rule was therein declared; whereas, and as we have just seen, a pedestrian in given circumstances may not be obligated—as a matter of law—to keep on looking in the same direction. We must keep in mind the rules of Restatement to which allusion was made in *Dokey* v. *Carpenter,* 300 Mich 648; likewise the circumscribing declaration made in that case (p 650 of report), *viz.,*

"Under ordinary conditions, it is the rule that the pedestrian must look and keep on looking, see what it is plain to see, and thus avoid being struck by a car coming in a straight line towards him. *Haley* v. *Grosse Ile Rapid Transit Co.,* 290 Mich 373; *Sloan* v. *Ambrose,* 300 Mich 188. *No general rule can be stated, however, that will govern all factual situations.*"

The jury below, having deliberated according to instruction, found that Mrs. Steger was not guilty of contributory fault. Such finding was justified by the evidence and we are unable to say that all reasonable men would disagree therewith. It fol-

lows that the motion for judgment notwithstanding verdict should have been denied and that the judgment entered below must be reversed.

The case should be reversed and remanded for entry of judgment on the verdict. Costs to plaintiffs.

SMITH, EDWARDS, and VOELKER, JJ., concurred with BLACK, J.

SHARPE, J. (*for affirmance*). I am not in accord with the opinion of Mr. Justice BLACK. There are certain undisputed facts in the case at bar which are controlling. This is not a case of crossing at an intersection, nor is it one where traffic lights are involved. Plaintiff attempted to cross a busy thoroughfare at a time when many school children were on the sidewalks or in the street. As plaintiff stepped from the curb she could have seen a car at a distance of 300 to 335 feet to her left. She states that she did not see defendant's car, but other witnesses did see it; hence, she must be charged with seeing what was plainly to be seen. By her own testimony she took no more than 5 steps when she collided with defendant's car, and at that time was approximately 8 feet from the curb where she started from.

I am of the opinion that the result to be attained is governed by *Schillinger* v. *Wyman,* 331 Mich 160, 164, where we said:

"Decedent could and should have seen defendant's car approaching; it did not suddenly swerve toward him, but approached and collided with him in its own outer lane. Decedent either failed to make proper observation before entering the east lane or, having made it, failed to see what was plainly there to be seen, *viz.,* defendant's car approaching him or, having seen it, negligently took his chances and

proceeded in the face of known danger, with the result that he walked into the side of or stepped immediately in front of defendant's left front fender. In any such event, viewing the testimony in the light most favorable to plaintiff, decedent was guilty of contributory negligence as a matter of law."

The trial court was right in granting a judgment *non obstante veredicto*.

Defendant may recover costs.

DETHMERS, C. J., and KELLY, and CARR, JJ., concurred with SHARPE, J.

