GILSON *v.* BRONKHORST.

PRITCHETT *v.* SAME.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

The prudence of a plaintiff who is claimed to have been negligent· must be estimated in view of what plaintiff had a right to· expect from the defendant.

2. SAME—CONTRIBUTORY NEGLIGENCE.

A plaintiff's conduct is judged on motion for directed verdict not by what could have been done but by the standard of care the· law exacts of him under the particular circumstances of his: criticized action or inaction.

3. AUTOMOBILES—MINOR PEDESTRIAN—CONTRIBUTORY NEGLIGENCE— SCHOOL ZONE—SPEED.

The circumstances that are involved in determining whether or· not plaintiff child is guilty of contributory negligence in a· case arising out of injuries received while passing over crosswalk on a street in a school zone shortly after school hours· include the motorist's speed of approach and the distance away.

4. APPEAL AND ERROR—DIRECTED VERDICT—RECORD.

The record is viewed favorably to plaintiff on review of denial, of motion for directed verdict.

5. AUTOMOBILES—MINOR PEDESTRIANS—SCHOOL ZONE—CONTRIBUTORY· NEGLIGENCE—QUESTION FOR JURY.

Question of contributory negligence of 9-year-old girl in passing. easterly over crosswalk on street in front of school shortly after·

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence § 192.
[2] 38 Am Jur, Negligence § 346.
[4] 3 Am Jur, Appeal and Error § 886.
[5] 5A Am Jur, Automobiles and Highway Traffic § 1048.
[6] 15 Am Jur, Damages §§ 72–74.
[7] 15 Am Jur, Damages §§ 373–377.
[8, 9] 53 Am Jur, Trial § 842.

school hours in a plainly-marked school zone and who was struck by southbound car when she had passed the center line by about 2 feet was properly submitted to jury, where it appears she had waited for northbound cars to pass and, although she had looked, did not see defendant approach.

6. DAMAGES—FUTURE PAIN AND SUFFERING—LEG INJURY.

Evidence, including testimony of attending physician, presented question for jury as to whether or not plaintiff 9-year-old girl was entitled to damages for future pain and suffering, where she had sustained a comminuted fracture of the left leg, a refracture at point of original fracture and shortening of the leg and at time of trial, over 4 years later, limped when tired.

7. SAME—FUTURE DAMAGES—INSTRUCTION—REQUEST TO CHARGE.

Instruction that plaintiff, if entitled to any damages, was entitled to damages for such pain and suffering or disfigurement, by a shortening of her leg or otherwise, as she was reasonably certain to undergo in the future *held,* not erroneous for lack of more detailed instruction that if there were a complete want of proof tending to show such a degree of probability of such consequences as to amount to a reasonable certainty that they will result from the original injury, damages for the future would not be allowable, where defendant proffered no such request.

8. AUTOMOBILES—PEDESTRIANS—CROSSING CENTER LINE—INSTRUCTIONS.

Portion of instruction given in action by eastbound 9-year-old girl against southbound motorist that if jury found she should have seen defendant approaching and proceeded in front of him unless she successfully negotiated the right-hand portion of the highway and had crossed the center line *held,* not reversible error when considered with the charge taken as a whole, especially in view of the opportunity afforded to offer correction of the instruction.

9. TRIAL—INSTRUCTIONS.

The fact that isolated sentences in an instruction are objectionable does not constitute reversible error, where the charge of the court, taken as a whole, correctly states the law applicable to the particular case and clearly defines the issue.

DETHMERS, C.J., and CARR and KELLY, JJ., dissenting.

Appeal from Muskegon; Fox (Noel P.), J. Submited October 10, 1957. (Docket Nos. 37, 38, Calendar Nos. 47,212, 47,213.) Decided June 12, 1958.

Case by Ida Gilson against Albert Bronkhorst for medical expense incurred in treatment of daughter, Judy Pritchett, and

Case by Judy Pritchett, by next friend, against same defendant for personal injuries sustained when struck by automobile.

Cases consolidated for trial and appeal. Verdicts and judgments for plaintiffs. Defendant appeals. Affirmed.

*Poppen, Street & Sorensen,* for plaintiffs.

*Hathaway, Latimer, Clink & Robb,* for defendant.

BLACK, J. These cases, originally assigned to a Brother Justice, were reassigned to the writer February 27, 1958.

Before us are consolidated actions for negligence in which it is alleged that the defendant motorist inflicted actionable injury to the person of plaintiff Judy Pritchett. Judy—aged 9 years plus at the time—attended the Hile school. The school premises are situated on the west side of highway US–31, a short distance south of Muskegon Heights. School had let out some 20 minutes prior to the events we are to consider. Judy stayed for the interval to help clean erasers. She then attempted crossing the highway, in front of the main school building and from west to east toward her home, as the defendant's car approached from the north. According to her favorably-viewed testimony, Judy was struck by the car after she had crossed the west half of the paved portion of the highway and was on the easterly half of the pavement. Defendant did not see the little girl until, according to his testimony, "she was right in front," no more than

2 feet away. No question as to sufficiency of proof of causal negligence on his part is presented. Further details will appear later by quotation from the trial judge's opinion.

Trial to court and jury resulted in verdicts and judgments for the respective plaintiffs. Defendant appeals.

*First: The Question of Contributory Negligence.*

Defendant insists that his motion for directed verdicts should have been granted, with bench-declared imputation to Judy of contributory negligence. We cannot agree.

There is no need for review of recent relevant decisions, the essence of which we apply to this case with declaration that "the prudence of the party injured (Judy) must be estimated in view of what he (she) had a right to expect from such other person (the defendant),"* and with corollarial declaration that the trial judge properly refused to hold this child-pedestrian guilty of contributory negligence in view of her undoubted right to rely on fair performance of the defendant's duty to enter and proceed through this school zone—especially considering the time of day—at reduced speed and with increased vigilance. See to the point *Steger* v. *Blanchard,* 350 Mich 579, 586 (rehearing, 353 Mich 140). If such a rule is applicable in proper case to an adult pedestrian, it must in circumstances as here be applied to the case of a 9-year-old school pupil.

In this case a large school had just let out. Motorists approaching the vicinity were plainly and precedently warned by proper traffic control signs of the imminence of a school zone. The testimony of a motorist defendant overtook and passed ("a big block" north of the school premises), tended to prove

---

* Quotation from *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99, 119.

that defendant was proceeding at an excessive rate of speed as he entered and proceeded through the school zone. True, and as defendant vehemently contends (with both feet planted firmly on *Denman* v. *Youngblood,* 337 Mich 383), the oncoming car was there to be seen by Judy—through and by means of "further observation"—prior to her attempted crossing. But that fact alone is not decisive in favor of an instructed verdict. Pedestrians in these days of crowded highways must on occasion—such assuredly is the case when a school is letting out or has recently released its pupils—cross in front of visibly approaching motor traffic. We judge their conduct on motion for directed verdict not by what *could* have been seen and done but by the standard of care the law exacts of them under the particular circumstances of their criticized action or inaction (*Normand* v. *Thomas Theatre Corporation,* 349 Mich 50) ; in other words, by a constantly variable standard which depends for its ascertainment on such circumstances. To this we need but add that the motoring-speed-of-approach factor, and the distance-away factor, as a child assumes to cross his marked school zone during or shortly after school hours, constitute a vital part of "the circumstances under which he acts." (Quotation from *Flynn* v. *Kramer,* 271 Mich 500, 505, followed in *Normand, supra.*)

While the question whether Judy was walking or running at the time was sharply disputed, we cannot on review of motion for directed verdict look at the record other than favorably to her. We accordingly arrive at agreement with the trial judge's disposition of the question of contributory negligence, quoted from the record as follows:

"This court has carefully considered the question of whether Judy Prichett was guilty of contributory

negligence as a matter of law and concludes that under the facts of this case such issue was properly submitted to the jury.

"This accident occurred on US-31, south of the city of Muskegon in front of the Hile school. US Highway 31 is a heavily-travelled highway, the paved portion of which is 20 feet wide. The area surrounding the school is a heavily-populated suburban community with some commercial buildings interspersed with homes. The school zone is plainly marked and was admittedly well-known to the defendant. A straight sidewalk extends from the entrance of the school to the berm of the highway at which a crosswalk for children exists. Defendant commenced passing another automobile at about the time he entered the marked school zone.

"The injured child was approximately 9-1/2 years old at the time of the accident. She testified she walked to the edge of the pavement and waited for a line of cars to pass in front of her traveling in a northerly direction; that she looked and saw no other cars approaching; that she proceeded to walk across the highway; that she crossed the westerly half of the highway and had proceeded 25 inches beyond the center line when defendant's auto, traveling in a southerly direction, struck her.

"Under the above circumstances the question of the child's contributory negligence was submitted to the jury. They apparently believed her version of the accident. The question of proximate cause was also submitted to the jury. The court is of the opinion that the contributory negligence of the plaintiff was a question of fact under all of the circumstances to be determined by the jury."

*Second: The Question of Future Damages.*

Relying on the general rule, first announced in Michigan when *Brininstool* v. *Michigan United R.*

*Co.*, 157 Mich 172, was handed down,* defendant insists that the trial judge reversibly erred in giving the following instruction to the jury:

"Now, if you find for the plaintiff, the plaintiff, Judy, will be entitled to receive damages for pain and suffering. You will also award her such sums as you find from the evidence will be fair and reasonable to compensate her for the pain and suffering to date, and for such pain and suffering which, under the evidence, she is reasonably certain to undergo in the future, or for such disfigurement, by a shortening of the leg or otherwise."

Judy was grievously hurt. The principal injury with which we are concerned was a splintering—comminuted—fracture of the left femur extending "from the level of the hip downwards for a distance of about 6 inches." Such fracture was first reduced through surgical installation of a metal plate and screws. When the fragments had apparently knit to the surgeon's satisfaction, the plate and screws were removed. This second operation was performed December 6, 1952, a little over 9 months after the date of accident and injury. January 6, 1953, Judy slipped and refractured the femur at the point of original fracture. The cause of the second fracture was attributed by the surgeon to "the atrophy of the bone, the weakness of it." Such fracture was reduced by a third operation, this time through installation in the femur of what is medically known as an intramedullary rod. The rod is made of stainless steel. It is usually introduced at the upper end

---

* The rule, quoted from *Brininstool* into *In re Boyer's Estate*, 282 Mich 552, 556, and *Kellom* v. *City of Ecorse*, 329 Mich 303, 308, reads as follows:
. "It is the generally accepted rule that to entitle a plaintiff to recover damages presently for apprehended future consequences of an injury, there must be such a degree of probability of such consequences as to amount to reasonable certainty that they will result from the original injury."

of the femur and is then driven down through the marrow canal to and beyond the point of fracture, thereby and in lay parlance splinting the fracture inside the bone itself. Later, and when healing is judged satisfactory, a final operation is performed, that of withdrawing the rod at the point of introductory surgery.

We turn from this background to the testimony disclosing surgical result and disability as found at the time of trial. The surgeon testified:

"We removed the intramedullary rod once healing was sound, as one always likes to do in children, because it does interfere with normal growth, and that was done in August of 1954, and she has been seen subsequently, and on our final examination on this child she was walking well, with a very mild stiffness of gait. She had normal range of motion in both hips, knees and ankles. She had normal growth, with a leg length discrepancy—shortness on the one side—of approximately 1/2 inch, and this will vary as she grows during the next few years.

"*Q.* Would you anticipate, doctor, that this difference in leg length will be a permanent condition, or is that something that will have to adjust itself?

"*A.* It frequently adjusts itself. Sometimes it may stay on permanently, in which event it's sometimes necessary, if it's more than an inch, or more than a half inch, actually, for a good gait it may be advisable to slow up the growth in the other side, so the other side can catch up.    *    *    *

"*Q.* Doctor, in your opinion, will this child suffer any permanent impairment of the use of this leg?

"*A.* At her age, she should suffer little, if any.

"*Q.* Do you anticipate that this child, in the future, might suffer any pain or discomfort from the fracture of her leg, doctor?

"*A.* Since she is a child, she shouldn't."

Before us is a typical question of judgment of the legal sufficiency of evidence. There being no other

testimony to the point, the issue is whether the surgeon's opinions quoted above, and the facts distinguished from opinions as related by him, call for ruling here that Judge Fox erred in submitting to the jury, for its determination, Judy's claimed right to damages for future pain and disability.

We start with the attested fact that Judy, at the time of trial, was suffering from a definite shortening of her left leg and the necessity of limping "when I get tired." We proceed from this to the experience related by the surgeon that it is sometimes necessary "to slow up the growth" of the normal leg "so the other side can catch up."* Finally, and as is readily apparent from the surgeon's testimony, no one can tell with fair accuracy whether the definite fact of partial disability, known at present, will correct itself; whether in the years ahead Judy will be required to undergo treatment to retard growth of her normal leg, and whether if given such treatment a sound and normal pair of limbs will result. These facts—irrespective of presence or absence of a professional opinion attesting permanent injury—warranted submission to the jury of the question of Judy's claimed right to damages for future pain and disability (*McDuffie* v. *Root,* 300 Mich 286; *Toman* v. *Checker Cab Co.,* 306 Mich 87 [14 NCCA NS 202]).

*Brininstool,* incidentally, did not on its facts hint that it was improper to submit the question of apprehended future consequences to the jury. On the contrary the question was held one for decision by "the twelvers" and the case was reversed—for new trial—for want of more specific instructions to the point. In *Brininstool* this is what the Court found, by way of summary, from the extended medical testimony as quoted (pp 179, 180):

---

* The nature of such treatment, by which the growth of one leg is retarded, is not explained in the record.

"Reading this testimony, it seems to us to amount, in effect, to this: No one could predict which, if any, of the severally enumerated disorders would supervene; but a condition had been created, an effect produced, by the injury permanently impairing the normal health of the plaintiff, manifesting itself in present nervousness, and likely to manifest itself in more serious nervous disorder, at some time during the probable life of the plaintiff."

It is apparent that counsel misapprehend the place (courtroom or juryroom) as well as the circumstances in which *Brininstool's* said rule—of "reasonable certainty"—is usually and of right applied to the testimonial facts. Depending on the proofs of the given case, the rule warrants either peremptory instruction that no damages for apprehended future consequences can be allowed or appropriate instruction that the question of right to such damages must be determined by the jury. In this case Judy's counsel submitted fact evidence from which the jury could have found, within scope of the rule (see *King* v. *Neller,* 228 Mich 15, 22), that Judy will suffer future pain and disability as a result of the original fracture and the surgical treatment she has necessarily received. We accordingly hold that the question of future damages was for the jury and not the court.

It is only where there is a complete want of proof, showing or tending to show "such a degree of probability of such consequences as to amount to reasonable certainty that they will result from the original injury," that the trial judge is justified either in refusing a request addressed to allowance of claimed future damages or in granting a request that damages for claimed future consequences cannot be allowed. Here, and if defendant had so requested, he would have become entitled to an instruction conforming in detail with *Brininstool's* said rule. He

preferred no such request and is in no position to assert that more detailed instructions to the point should have been given.

*Third: Instruction On Contributory Negligence.*

The final question of apparent moment is advanced by defendant's stated question 4, which question tests paragraph 47 of the jury charge as given. The Chief Justice, having quoted said paragraph 47 in his opinion (*post*, p 164), writes that on account of concluding language of the paragraph—"unless, however, the plaintiff had successfully negotiated the right hand portion of the highway and crossed the center line of the highway"—the trial judge "in effect" charged that, if Judy successfully crossed the center line before being struck, she was free from contributory negligence as a matter of law. Such reasoning, as I view it, arrives at its "in effect" conclusion for want below of rounding out said paragraph 47 by adding: "in which event the question of her contributory negligence is to be determined by the jury in accordance with my general instructions on that score" (or words to such effect). The unfinished discourse of the trial judge admittedly was unfortunate, if not technically erroneous, yet he did not thereby say or instruct that the little girl was free from contributory negligence if it be found that she "made it" (see Mr. Justice Smith in *Bartlett v. Melzo,* 351 Mich 177, 178) over the center line. Rather, he approached—yet left unsaid—that which defendant draws by inference from the mentioned paragraph. For our part, the sickening cost and untoward delay of necessary and unnecessary retrials in mind,[*] we refuse to read—with reversible result—into the language of a jury charge that which is not plainly and instructionally there. Instead, it is suggested that we should pursue our

[*] Judy's injuries were sustained February 25, 1952. The cases were tried July 11, 1956.

sound and matured practice of looking at a jury charge in its entirety to find whether isolated and context-lifted portions constitute error and, if so, whether such error is reversible.

Considered with the remainder of this lengthy charge, containing as it does repeated and presently unopposed declarations of the law of contributory negligence as applied to the facts of the case and the plaintiffs' burden of disproof thereof, we cannot agree that the quoted qualifying words of said paragraph 47 eliminated from jury consideration ("to all practical intents and purposes" if there be jury finding of safe passage to and beyond the center line) the entire remainder of the charge on the subject of contributory negligence.

The charge consists of 19 printed pages. It is a model job in general and, save only in this considered instance, was more favorable to defendant than he might reasonably have insisted upon. When it was concluded the trial judge inquired "Anything else?", to which defendant's counsel responded with request that the defendant's claim in the case be stated and with objection that the court had instructed to the subject of future damages "although the mortality tables are not in evidence." Nothing was said about the point now viewed. Surely, and if counsel had then attributed to the criticized words of instruction (they were "alive" in the courtroom at the time) the prejudicial effect he now urges with respect thereto,* it is fair to assume that he would have called the judge's attention to such words, in open court or at chambers, in order that opportunity for corrective instruction be given.

---

* The condensed essence of defendant's briefed claim in such regard is that "In effect the trial judge thus told the jury that even though Judy was negligent in not seeing defendant's car, she could recover if she had crossed the center line of the highway.", and that "This instruction permitted Judy to recover, despite any finding by the jury that she was negligent."

In the recent case of *Kaminski* v. *Grand Trunk W. R. Co.,* 347 Mich 417, 429, this Court found occasion to consider an assignment directed to another context-lifted technical error of jury instruction. We need not repeat what was said on the occasion. Applying rules quoted from *Labar* v. *Crane,* 56 Mich 585; and *Robertson* v. *Hayes,* 261 Mich 200, it is held—in paraphrase of *Robertson*—that if defendant's counsel, present at the time, observed the "in effect" error now pressed upon us, such counsel doubtless would have then called it to the trial judge's attention for correction. On the other hand, and if counsel did not then notice or comprehend the presently-claimed prejudicial effect thereof, it would appear farfetched to assume that the jury took from the criticized words a controlling instruction that Judy was not guilty of contributory negligence if its members found she "crossed the center line" prior to impact.*

Assignments of error aimed at a doubtful or erroneous small island of an otherwise proper jury charge are consistently approached in this Court. Quoting from *Provost* v. *Brueck,* 110 Mich 136, we said in *Bouma* v. *Dubois,* 169 Mich 422, 434:

"Where the charge of the court, taken as a whole, correctly states the law as applicable to the particular case; and clearly defines the issue, the fact that sentences are objectionable, when considered inde-

---

* We do not intimate that counsel must except to the charge either as to parts or the whole thereof. Neither must objection be made to save for review that which fairly amounts to reversible error of instruction or failure of instruction. We do suggest, following *Labar, Robertson* and *Kaminski,* that counsel will do well—preferably at chambers after the jury has retired—to call up for immediate repair as indicated any apparent inadvertence or possibly confusing ambiguity of language the trial judge has isolatedly employed. We judge the importance of errors of such nature, and their consequent effect as being either reversible or harmless, in part by the attitude of counsel toward same when time yet remains to set things right in the jury room.

pendent of the context, does not constitute reversible error."

On at least a score of occasions this Court has since so affirmed. Examples appear in *Hayes* v. *Coleman,* 338 Mich 371 ; *Bathke* v. *City of Traverse City,* 308 Mich 1; *Stehouwer* v. *Lewis,* 249 Mich 76 (74 ALR 844) ; *Holmes* v. *Borowski,* 233 Mich 407 ; *Hall* v. *City of Flint,* 195 Mich 638; and *Sloman* v. *Credit Guarantee Co.,* 112 Mich 258. In *Max* v. *City of Detroit,* 337 Mich 674, 678, Mr. Justice BUTZEL, writing for a unanimous Court, found occasion to declare the ruling with vigor and care of citation. And in *Eger* v. *Helmar,* 272 Mich 513, 517, we find what well may be said in disposition of defendant's said question 4:

"In the instant case, as sometimes happens, certain portions of the charge to the jury when isolated from the general context are somewhat indefinite and possibly inaccurate. But as a whole we think the charge advised the jurors of the law applicable to the case in such a manner as enabled them to make an intelligent and just disposition of the controverted issues."

We promptly would agree with the Chief Justice had the trial judge actually told the jury that Judy should be judged free from contributory negligence if it be found that she successfully and prior to impact crossed the west half of the pavement. However, since no such instruction was given other than "in effect," if at all, and since this otherwise informative charge submitted the presented issues properly and in detail, we find that the error as claimed, if indeed it rise to the dignity of reviewable error, is not reversible.

We vote to affirm, with costs to plaintiff.

SMITH, EDWARDS, and VOELKER, JJ., concurred with BLACK, J.

Dethmers, C.J. (*dissenting*). The opinion of Mr. Justice Black states the facts in these cases. Viewing the evidence in the light most favorable to plaintiffs, as we must in considering defendant's claimed right to directed verdicts, I would add or re-emphasize the following: Plaintiff Judy Pritchett, walking east from the front of the school, stopped 2 feet west from the west edge of the 20-foot pavement, looked both north and south, saw a line of cars approaching from the north and waited for them to pass, looked both ways again, saw no automobiles approaching, and proceeded east, after which she did not again look either to right or left; then crossed the west half of the pavement and took a step or two (about 25 inches) beyond the center line into the east half of the pavement, when she was struck by the left front fender of defendant's southbound automobile, which she had not seen at any time before the impact. A big block north from the point of impact defendant's automobile had passed another southbound automobile but had returned completely to the west half of the pavement as it approached the school.

Defendant relies on a line of decisions, the most recent *Denman* v. *Youngblood,* 337 Mich 383, holding even young children guilty of contributory negligence as a matter of law for undertaking to walk across a street in front of approaching vehicles without maintaining a reasonable and proper lookout for them. In *Denman,* the defendant's automobile approached on its right side of the street and was still there when it struck the infant pedestrian. Distinguishable is the instant case, in which plaintiff, before being struck, had crossed the west half and entered upon the east half of the pavement where defendant's southbound automobile had no right or reason to be, so far as the proofs show, and where plaintiff might reasonably have assumed that she

would be safe from southbound vehicles even if she had looked and seen defendant's automobile approaching on the west half of the pavement after it had completed the passing of the other southbound automobile as above noted.   Under such state of facts, the question whether an ordinary, reasonable and prudent person under like circumstances and in the position of plaintiff, even had she looked and seen defendant's automobile coming, might not have concluded that she could cross the west half of the pavement in safety, as plaintiff succeeded in doing, and thereafter be in a place of safety, and, hence, whether her negligent failure to so look and see was a proximate cause of the accident and, therefore, contributory negligence, has been held to present a question of fact for the jury, not to be disposed of by the court as a question of law.   *Rowland* v. *Brown,* 237 Mich 570; *Dreyfus* v. *Daronco,* 253 Mich 235; *Lawrence* v. *Bartling & Dull Co.,* 255 Mich 580; *Sanderson* v. *Barkman,* 264 Mich 152; *Rak* v. *Lake* 271 Mich 274; *Leete* v. *Gould,* 308 Mich 345; *Gibson* v. *Traver,* 328 Mich 698; *Knoellinger* v. *Hensler,* 331 Mich 197.   Consequently, I agree with Mr. Justice BLACK that defendant was not entitled to a directed verdict because the question of plaintiff's contributory negligence was not one of law but one of fact to be determined by the jury.

Defendant seeks reversal and new trial on the ground that a finding, presumably made by the jury, that plaintiff had crossed the center line before being struck would be against the great weight of the evidence.   Examination of the pertinent portions of the testimony does not so persuade us.

I do not differ with Mr. Justice BLACK's conclusions with respect to the question of damages.

Defendant claims reversible error, entitling him to new trial, in the court's instructions to the jury and particularly in the following portion:

"If you find from the evidence that the plaintiff, Judy, by the exercise of reasonable care and caution, should have seen the defendant's automobile as it approached her, and that under the existing circumstances and conditions the plaintiff was not exercising reasonable care and caution for her own safety, in continuing to proceed on the highway, or attempting to cross in front of the defendant's motor vehicle, then and in that event, the plaintiff would be guilty of contributory negligence and would not be entitled to recover damages in this case, unless, however, the plaintiff had successfully negotiated the right hand portion of the highway and crossed the center line of the highway."

This, the defendant contends, amounted to instructing the jury that, as a matter of law, plaintiff was free from contributory negligence if she "had successfully negotiated the right hand portion of the highway and crossed the center line of the highway." This resulted in taking from the jury the determination of the question whether plaintiff's actions or failures to act amounted to contributory negligence if the jury found that she had crossed the center line. A holding by the trial court that plaintiff was guilty of contributory negligence as a matter of law would have been erroneous because, viewing the evidence in the light most favorable to her, she had crossed the center line and, accordingly, as above considered, the question was one of fact for the jury under the above-cited authorities. By the same token, it was error for the court to charge the jury that, if they found that plaintiff had crossed the center line, in such case she was, as a matter of law, free from contributory negligence, thus depriving the defendant of a jury determination of the latter question. The right of a jury decision of this question and to have the court refrain from deciding it ad-

versely to him, as a matter of law, was as fundamental to defendant as to plaintiffs.

Plaintiffs urge the familiar principle that the charge of a court must be considered as a whole and error will not lie upon detached sentences which, when construed with the rest of the charge, are not objectionable. *Hayes* v. *Coleman,* 338 Mich 371. The difficulty here is that, despite the extended statement of the nature and effect of contributory negligence contained in the portions of the instructions relied upon by plaintiffs as curing the above noted error, consideration thereof was to all practical intents and purposes eliminated from the jury's deliberations by the court's instruction, in effect, that it had no application to the case if the jury found that plaintiff had crossed the center line. Nothing in the instructions served to correct that error. This is not a case, therefore, in which it may be said that the portion of the charge in question is erroneous only if detached from the rest of the charge but no longer objectionable when construed with the entire charge. It was controlling of the rest of the charge, erroneous, and, therefore, prejudicial to defendant's rights. For this reason the cases should be reversed and remanded for new trial, with costs of this appeal to defendant.

CARR and KELLY, JJ., concurred with DETHMERS, C. J.

KAVANAGH, J., took no part in the decision of this case.