STEGER *v.* BLANCHARD.
ON REHEARING.

1. AUTOMOBILES—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Whether or not southbound pedestrian, a 63-year-old schoolteacher, was guilty of contributory negligence was a question for the jury, where (1) it appears she had looked to east and did not see defendant, 16-year-old westbound motorist, approach for a distance of upwards of 300 feet and (2) presence of school buses and other departing eastbound traffic, incident to dismissal of school for the day, engaged her attention to the right as she sought to cross 43-1/2-foot pavement to attend teachers' meeting to which she had been summoned.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—CONDUCT OF DEFENDANT.

Whether or not a plaintiff is guilty of contributory negligence must be weighed, not alone by what he did or did not do, but what corresponding conduct, especially by way of legal duty, the plaintiff had a right to expect of the defendant.

3. SAME—CONTRIBUTORY NEGLIGENCE—OBSERVATION.

What the plaintiff should have seen in the exercise of due care is the test of legal observation required of a plaintiff so as not to be guilty of contributory negligence as a matter of law, not what he could have seen, as a matter of physical fact.

4. SAME—CONTRIBUTORY NEGLIGENCE—WITNESSES.

Whether or not a plaintiff was guilty of contributory negligence as a matter of law in a given situation should not be weighed solely on the basis of what other witnesses saw or might have seen, especially if they had vantage points not comparable to plaintiff's situation.

DETHMERS, C.J., and CARR and KELLY, JJ., dissenting.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3]  5A Am Jur, Automobiles and Highway Traffic §§ 757, 758.
[2]  38 Am Jur, Negligence § 192.

Appeal from Lenawee; Martin (Rex B.), J. Submitted on rehearing April 18, 1958. (Docket No. 99, Calendar No. 47,202.)   Decided June 12, 1958.

Case by Maude L. Steger and Hartford Accident & Indemnity Company, a foreign corporation, subrogee, against L. E. Blanchard for damages for personal injuries sustained when plaintiff pedestrian was struck by automobile while crossing street in front of school shortly after classes were dismissed for the day.   Judgment for defendant *non obstante veredicto.*   Plaintiffs appeal.   Reversed.

*Francis T. Ready* and *Baker, Hammond & Baker,* for plaintiffs.

*Baldwin & Walker,* for defendant.

KELLY, J. (*dissenting*).   At the June, 1957, term of Court this appeal was first submitted and on the 24th of December, 1957, an opinion, written by Justice Edward M. SHARPE, resulted in the affirmance of the trial court's order for judgment *non obstante veredicto.*   Chief Justice DETHMERS, Justice CARR and Justice KELLY joined with Justice SHARPE for affirmance.   Justice BLACK wrote for reversal and Justices EDWARDS, SMITH and VOELKER concurred. Those opinions are reported in 350 Mich 579.

Motion for rehearing was granted by a divided Court, following the retirement of Justice SHARPE, and the case is again before us.   Nothing new has been submitted in the way of evidence, argument or briefs—the cause is presently before us on the originally filed briefs and appendix.   The only change, as I see it, is the change of personnel of our Court, as Justice SHARPE's term expired on December 31, 1957.

There being no change in the briefs, evidence, or proofs, the legal principles at issue being the same,

the result should be the same. No purpose would be served by restating the facts or the reasons for the result reached. The prior disposition of the case should not be changed. Judgment should be affirmed, costs to defendant.

DETHMERS, C. J., and CARR, J., concurred with KELLY, J.

VOELKER, J. There is one other change which my Brother overlooks. Along with the change in personnel on this Court already noted by him there has come, for better or worse, several significant changes in how a majority of this Court views the law. And this particular area of the law of negligence is chief among them.

Justice SHARPE originally affirmed this case on the basis of *Schillinger* v. *Wyman,* 331 Mich 160. Mrs. Steger had not "seen what was there to be seen;" therefore she was deemed guilty of contributory negligence as a matter of law. Justice KELLY would presumably for the same reason likewise affirm. Since the departure of Justice SHARPE the *Shillinger Case* has been sharply criticized (*Shaw* v. *Bashore,* 353 Mich 31), and it and its progeny (so far at least as concerns the presumption of due care) may henceforth be regarded as overruled and laid to rest.

That should perhaps be enough to say, but there is a little more. Even if the rule of *Schillinger* were still the law, the fact situation in that case and this are vastly different. That case involved a hardy pedestrian undertaking the great adventure of walking obliviously across a 4-lane superhighway in the open countryside at a time when no other traffic or pedestrians were abroad and no other cars were in sight in either direction. The pedestrian lost his adventure and the case.

Here we have a motorist approaching a school which was letting out, with all of the attendant and obvious congestion of darting and milling people and cars and school buses. Here our pedestrian plaintiff had many things to observe from many directions. Even if she had continued to look east this plaintiff, a short woman under 5 feet, could not have seen even the top of the approaching car until it hove over the crest of Cobb street hill. She did look in that direction from a place of safety and she did so at a time when, on favorable view, we must assume that the defendant's car was not yet in sight. She then started forward, her best attention for good reason concentrated mainly on possible danger ahead and to her right; imminent and close danger which, we hazard a guess, a person exercising reasonable prudence might also normally expect to encounter and pay heed to under the circumstances of a crowded departure from a closing school.

The thing comes down to this: If Mrs. Steger's conduct under these circumstances amounted to a want of due care, it was for the jury and not for the trial judge or us to determine. We think that in these circumstances the jury was entitled to find in effect—if it chose—that for the moment the thronged street belonged principally to the outletting school and to those gathered about it, and that any passing motorist should have proceeded accordingly. But no, we are told, in effect, that these considerations are unimportant and that Mrs. Steger must lose because she failed to "see what was there to be seen." In lieu of a verdict we shall instead present her with an incantation, a magic phrase. Presumably if she had indeed kept her eyes glued on the westbound Blanchard car and instead been clobbered by an eastbound school bus we would have regretfully told her the same thing.

Such a rule, when divorced from the facts to which it might properly apply, can be made to fit all occasions. And so it happened—the rule of *Schillinger* has since been applied regardless of the facts. This is only the latest attempt. Such blind application of a rule is judicially to endow pedestrian mankind with the swivelhead of an owl—a curious species of mankind ostensibly equipped with extra eyes located elsewhere than in the head. But for all our past graciousness in thus endowing pedestrians it seemed that reciprocity was not to be involved. For such a rule also totally overlooked the driver and indulgently, if inconsistently, rewarded the astigmatic motorist for himself failing to see what was there to be seen. Apparently the more careless the motorist—as demonstrated in the unpredictable light of what later happened—the more careful the plodding pedestrian should be to lavish his very best due care upon the most careless person or situation present. So it came to pass that we not only generously endowed the pedestrian with a swivel head, but with prescience as well. We were willing to let him have everything but a verdict.

Rules of law are necessary; properly applied they can succinctly gather in the loose ends of a case and help rationalize the decision. Our courts could scarcely operate without them. But when a rule of law or its application becomes so divorced from the context of reality, from the living human situations to which it is sought to be applied, it becomes meaningless incantation and downright harmful. It isn't always what the rule says that is so bad; it is how it is applied. The rule of *Schillinger*, quoted by Justice SHARPE in this case, has been so consistently misapplied in so many cases that one is sore tempted to throw out the rule along with the misapplications. At the very least it must be care-

fully confined to those factual situations it properly fits.

Thus in our case neither plaintiff's conduct nor the rules we would apply thereto can be divorced from the practical human realities of the situation, else she finds herself not only hit by a disembodied car, legally speaking, but hit once again—and this time "for keeps"—by a disembodied rule. As we recently wrote in *Hoffman* v. *Burkhead,* 353 Mich 47, 56, 57:

"We cannot in these situations isolate and examine the plaintiff's conduct in a vacuum, like a beetle under a glass; his conduct must be examined and weighed in conjunction with what corresponding conduct the plaintiff might reasonably have expected on the part of the defendant. As Mr. Justice BLACK recently so well said in his well-reasoned opinion in *Weller* v. *Mancha,* 351 Mich 50, 67, quoting approvingly from earlier but recent cases:

" ' "As we have previously seen (*Clark* v. *Shefferly,* 346 Mich 332) the question of contributory negligence is usually judged, not alone by what the plaintiff did or did not do, but also by the conjoining facts pertaining to what in the way of legal duty the plaintiff had a right to expect of the defendant." ' "

Mr. Justice SMITH phrases another facet of the problem with characteristic penetration and clarity in his searching opinion in *McKinney* v. *Yelavich,* 352 Mich 687, 697, 698, where he writes:

"We find repeatedly in our cases the court's observation that the automobile was 'plainly there to be seen' and, hence, plaintiff's failure to see it comprised contributory negligence 'as a matter of law.' This easy and fallacious legal jingle answers exactly nothing. Of course the car is always there to be seen. It is just as visible to the pedestrian as the pedestrian is to its driver. But the question is not what the pedestrian could have seen, as a

matter of physical fact, but what he should have seen in the exercise of due care. These are vastly different propositions."

Nor should plaintiff's conduct be weighed and judicially condemned solely on the basis of what *other* witnesses saw or might have seen, as Justice SHARPE's original opinion in this case would have it. Of course other people in other and possibly more favorable positions and postures may have seen the Blanchard car, especially people in other cars moving toward the rapidly approaching car. For one thing, they may for the moment have had nothing else to do. Are we blindly to measure the presence or absence of due care on the part of Maude Steger by what others (upon whom may have rested no such pressing corresponding duties and preoccupations) might possibly have physically seen? Are we to turn her out of court because a workman safely up on a telephone pole, say, might possibly have seen the Blanchard car a mile away? We say no.

The fact that Mrs. Steger first did look to the east, and that she then started to cross without further eastward look, just as the mentioned witnesses were driving east followed by their seeing defendant's car, affords no ground for holding Mrs. Steger guilty of contributory negligence as a matter of law. This must be so unless we are to declare that a pedestrian must in all circumstances, even the extreme ones of congestion and concentrated one-direction motor traffic here shown, look and continue to look only in the direction of the ultimate "after-the-fact" greater danger—danger created by proven negligence of a defendant motorist—regardless of the imminence of possible harm from other sources and directions.

As we have suggested, such a rule divorced from the context of applicable facts is to say to a pedestrian that if the car of a negligent motorist manages to hit him, due care requires that the victim should all along have ignored all else only to stare at it. This is a curious rule of due care. Such a rule tells a pedestrian that he should ignore all other areas that might require watchfulness on his part and, with the prescience of an Indian fakir, concentrate only on what later proved to be the most careless and dangerous among all the possible sources of harm.

For reasons given in the excellent original opinion of Mr. Justice BLACK, supplemented now by Mr. Justice SMITH's landmark opinion in *McKinney v. Yelavich, supra,* we decline to so hold. Reversed and remanded for entry of judgment on the verdict of the jury. Costs to plaintiffs.

SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred with VOELKER, J.