## KAMINSKI *v.* GRAND TRUNK WESTERN RAILROAD COMPANY.

1. NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.

It is for the judge to say whether negligence may be inferred from the evidence and, if submission be made, for the jury to say whether negligence ought to be inferred therefrom.

2. SAME—DIRECTED VERDICT.

The case must be a very clear one which would justify a trial court in taking upon itself the responsibility of directing a verdict for defendant on the ground that he was not guilty of negligence as a matter of law.

3. SAME—EVIDENCE—CONJECTURE.

A trial judge must determine in passing upon defendant's motion to direct verdict in his favor whether the plaintiff's claim of defendant's negligence is equally plausible with defendant's claim that his negligence is conjectural only, even when the evidence is construed on favorable view to plaintiff.

4. WORDS AND PHRASES—CONJECTURE.

A conjecture, as 'a' theory of causation, is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference.

5. NEGLIGENCE—PROXIMATE CAUSE—CONJECTURE.

There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 7] 38 Am Jur, Negligence § 344 *et seq.*
[3] 38 Am Jur, Negligence § 285 *et seq.*
[5, 6] 38 Am Jur, Negligence §§ 49 *et seq.*, 212 *et seq.*
[8] 3 Am Jur, Appeal and Error § 837; 38 Am Jur, Negligence §§ 367, 368.

6. Same—Proximate Cause.

Evidence pointing to 1 theory of causation, indicating a logical sequence of cause and effect, presents a juridical basis for determining causation, notwithstanding the existence of other plausible theories with or without support in the evidence.

7. Railroads—Negligence—Directed Verdict—Factory Trailer— Evidence.

Directed verdict for defendant railroad company was properly denied in action by plaintiff, a journeyman electrician in a factory who was struck on the right knee and thrown onto a dark green 4-wheel factory trailer at 10:20 p.m. in a poorly-lighted portion of the factory grounds after hearing a screeching or clanking noise while defendant's 2-unit train was slowly approaching the paved area, where it appears defendant's train crew members had previously had to remove trailers from the tracks, the conductor on the right front end could see 40 to 50 feet ahead and some 5 feet beyond the left rail of the left-curving track but did not see the trailer nor plaintiff until after the train had been stopped, there being testimony from which a jury could properly infer negligence on the part of defendant's train crew members.

8. Appeal and Error—Instructions—Inadvertent Error.

Inadvertent and erroneous statement by trial judge in charge to jury that if plaintiff was guilty of any negligence which contributed to any extent or any degree to the causing of his injury, he could recover from defendant *held,* not reversible, where court's charge as a whole, fairly and properly advised jury it must find defendant negligent and plaintiff free from contributory negligence to entitle latter to recover and no one called the court's attention to his obvious error.

Appeal from Wayne; Robinson (Thomas N.), J., presiding. Submitted October 31, 1956. (Docket No. 67, Calendar No. 46,981.) Decided December 28, 1956.

Case by Mitchell Kaminski against Grand Trunk Western Railroad Company for personal injuries sustained during switching operations on private property. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

Carl F. Davidson (John J. Beach and Konrad D. Kohl, of counsel), for plaintiff.

Tryand & Tendler (James P. Tryand, of counsel), for defendant.

Black, J. This is a negligence case. The rule of conjectural cause is pressed upon us by a defendant held actionably negligent in the court below. We are reminded of decisions alleging that this Court does not recognize the doctrine res ipsa loquitur. It is said that the evidence before us proves an accident only, and that there is a want of proof or inference from proof justifying the verdict and judgment under review. The question is recurrently vexing, yet it need not be, at least in so marked a degree as modern experience discloses.

There are worthy landmarks. All that is needed is devotional reidentification thereof. Seventy years ago another defendant's counsel, having criticized then recent decisions dealing with the law of negligence, requested that this Court "lay down some definite and fixed rule by which we would be governed upon this question" (Carver v. Detroit & Saline Plank Road Co., 61 Mich 584, 591*). Our predecessors did so on that occasion, following extended review of authorities without as well as within Michigan. Having pointed out that it is for the trial judge to say whether negligence may be inferred from the evidence and, if submission be made, for the jury to say whether negligence ought to be inferred therefrom, the Court went on to say (p 593 of report):

"The difficulty is not in the rule, but in the application of it to the facts of the particular case. The testimony is often of such a nature that the trial

---

* By oversight the first opinion in this case was not reported in proper order. It appears in 69 Mich at page 616.

judge is greatly embarrassed to determine whether any facts have been established by the evidence from which negligence may be reasonably inferred. *In all cases of doubt, the proper method is to submit the evidence to the jury, under proper caution and instructions, to determine whether, from the facts as they shall find them established by the evidence, negligence ought to be inferred."*

It will be noted, on examination of. *Carver,* that Michigan's nationally-recognized authority (*Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99) is cited in lead support of the quoted rule. It will be noted, too, that such rule has been pursued and applied for many years in a variety of cases. Instances of its application will be found in *Schoepper* v. *Hancock Chemical Co.,* 113 Mich 582; *Stowell* v. *Standard Oil Co.,* 139 Mich 18 (17 Am Neg Rep 569); *Parker* v. *Union Station Ass'n,* 155 Mich 72; *Waidelich* v. *Andros,* 182 Mich 374; *Burghardt* v. *Detroit United Railway,* 206 Mich 545 (5 ALR 1333); *Butrick* v. *Snyder,* 236 Mich 300; *Collins* v. *Perry,* 241 Mich 361; *Pattinson* v. *Coca-Cola Bottling Company of Port Huron,* 333 Mich 253; and *Spiers* v. *Martin,* 336 Mich 613. It appears to have been epitomized best by Mr. Justice COOLEY (3 Cooley on Torts [4th ed], § 481, p 389) in these words:

"But in a very large proportion of the cases in which negligence is counted upon, the facts are of that ambiguous quality, or the proper conclusion so doubtful, that different minds would be unable to agree concerning the existence of fault, or the responsibility for it. The question will often be, does the defendant appear to have exercised the degree of care which a reasonable man would be expected to exercise under like circumstances? To such a question a man of exceeding cautious temperament might respond that he did not; another more sanguine and bold might say he did; and by the side of

one or the other of these would the rest of the community range themselves, each person largely affected by temperament and perhaps by his own experience, but firmly maintaining that rule to be a proper one which now, on a retrospective examination of the facts, seems to him to be such.

"If the judge, in such a case, were to pass upon negligence as a question of law, he must, in doing so, be endeavoring to enforce a rule of a variable nature, which must take its final coloring from the experience, training, and temperament of the judge himself; a rule which his predecessor might not have accepted, and which his successor may reject, and upon which a court of review may reverse his action, not because the facts are differently regarded, but because judges are men and men are different."

Assuredly, judges are mortal men, "and men are different." For that standout reason the case at hand must indeed "be a very clear one which would justify the court in taking upon itself this responsibility"* (that of instructed verdict in a negligence case). It is thus right to say that the trial judge's immediate duty, motion for direction having been made with address to the rule of conjectural choice between equally plausible inferences, is to determine on favorable view of the inference plaintiff relies upon whether it stands equiponderant at best with such as is, or are, urged by the defendant. If the answer is affirmative, then and only then will the judge be justified in proceeding as moved.

Some 30 years ago the supreme court of Alabama adopted a workable test-definition designed toward ascertainment of what is conjectural and what is

* Quotation from *Van Steinburg Case* (p 120 of report). It is worthy of note that on December 5, 1956, the court of appeals for the 6th circuit praised anew and duly applied the precepts set forth in *Van Steinburg*. See *Patterson* v. *Pennsylvania R. Co.* (CCA), 238 F2d 645.

not in negligence cases.* That court recently referred to such definition as having "been quoted until it has become a classic" (*City of Bessemer* v. *Clowdus*, 261 Ala 388, 394 [74 So2d 259]). We quote it as follows from the *Bessemer Case:*

"As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."

Much the same language will be found in *Juchert* v. *California Water Service Co.*, 16 Cal2d 500 (106 P2d 886), where the question was considered at length. Quoting from an earlier case the court said (p 507):

"If, however, plaintiff has proven sufficient facts to justify a verdict upon *one* theory, the fact that there may be one or more other seemingly rational explanations of the episode in no manner precludes a recovery or invalidates the verdict. These are mere matters of argument to be presented to the jury."

Turning now to the record: Reference is made initially to the defendant's official report of this accident. The report was filed in March of 1953 with the public service commission. It describes the occurrences we are to consider in the following language:

---

* *Southern R. Co.* v. *Dickson*, 211 Ala 481, 486 (100 So 665, 669).—
REPORTER.

"It is reported that as locomotive was moving over private track in factory yard it struck a plant 4-wheel trailer parked too close to track. As trailer rolled into clear it struck factory employee working near by."

Subject to presently unimportant exceptions both parties have accepted the trial judge's statement of facts as set forth in his opinion denying defendant's motion for new trial. It follows:

"On March 17, 1953, at 10:20 p.m. plaintiff, Mitchell Kaminski, employed as a journeyman electrician at General Motors gear & axle plant on Holbrook avenue near the borderline of Detroit and Hamtramck, had occasion to cross from one area to another on the plant premises. At the same time defendant Grand Trunk Western Railroad Company was operating a 2-unit train on the employer's premises consisting of a gondola car, of which the overall length of the car body was 41' 6", which was being pushed by a Diesel switching locomotive and which was proceeding northerly in a forward direction. The train was on a spur track running in a northerly and southerly direction across the premises with an 18° curve to the left. The purpose of defendant's operation was to switch the loaded gondola car to a subtrack at a switch point about 160 feet ahead of its position on the spur track and thence into one of the plant buildings where the spur track ends.

"The surface area of the premises was paved, and on the spur track there was a plank crossing. For a distance of 51 feet and upwards west of the spur track the paved surface sloped toward the track, the greatest grade being 1.54%, but the crossing itself was elevated slightly above the grade.

"As plaintiff, walking in a northerly direction, approached this crossing, he heard the rumble of defendant's train as it approached the crossing and stopped about 6 feet westerly from the spur track, stepped backward 2 steps and watched the train probably 5 or 6 seconds during which time it traveled

10 or 20 feet. He could see ahead of him about 4 or 5 feet in the darkness. While standing in such position, plaintiff heard a screeching or a clanking noise and was then struck forcefully in the right knee by an object that he did not see. He found himself an instant later lying injured on top of a metal cart or truck trailer, referred to herein as a trailer.

"The deck of the trailer was flat; 15″ off the ground; had 4 metal stakes welded in the corners which extended 24″ above the flat surface; was on rubber wheels equipped with ball bearings, and had a tongue or hitching rod connected to the undersurface of the top that extended out 28″ from one end of the trailer, the flat surface of which is 36″ wide and 72″ long.

"The train operated by the defendant was going northerly at a speed of about 6 to 8 miles per hour when it entered the curve, but at the crossing it had slowed down to from 3 to 5 miles per hour; the headlight was bright and shining in a forward direction; the signal bell was ringing; the conductor was on the extreme right front corner of the gondola car called the point of the car, a small lighted lantern in his hand. He could see 40 or 50 feet ahead, was looking in a 25′ span and could see to the left, westerly, for an unspecified distance that was upwards of 5′ beyond the west rail of the spur track. He did not see either the trailer or the plaintiff prior to hearing the screeching or scraping sound coming from the left side of the gondola car. The engineer and fireman were in their proper positions in the right and left side of the cab, respectively.

"The night was dark, the area was poorly lighted but not in complete darkness; there were no flood lights. No witness saw the trailer which was painted a dark green color until plaintiff was found lying on it immediately after the occurrence by members of the train crew. The conductor, from his position on the point of the gondola car, heard a scraping or screeching sound on the left side somewhere near the middle of the gondola car, gave emergency signal

and the train stopped within 8 or 10 feet thereafter. The gondola car was at the crossing in the middle of the curve when the emergency signal was given. Plaintiff was lying in a prone position on the top of the trailer which was 10 or 20 feet northerly from and beyond the gondola car and 5 or 6 feet to the left side on the westerly side of the track. There were no other foreign objects in the vicinity and no persons present who might have observed the accident. The farthest point of the overhang of the gondola car was at the center of the gondola car and was established at 3′ 1/2″ on the 18° curve.

"The switching operation was part of a movement of approximately 200 cars per day either in or out of the plant, performed by switching crews working three 8-hour shifts. It was not unusual for employees to walk back and forth in that particular area and in so doing make use of the crossing, a fact known to the conductor, who also testified that at times it was necessary for train crews to stop trains in the area to remove or have removed trailers that were either on the tracks or too close to the tracks for clearance."

*First:* Defendant insists that plaintiff, having called conductor Miller to the stand for cross-examination, is bound by Miller's testimony; that Miller's testimony, portrayed as being undisputed, establishes that there are nonnegligent inferences of causation equal in evidentiary value to the one plaintiff relies upon, and that the cause of plaintiff's injuries is therefore conjectural. It contends that rules set forth in *Poundstone* v. *Niles Creamery,* 293 Mich 455; *Manley* v. *Potts,* 286 Mich 671; *Barry* v. *Elkin,* 332 Mich 427; and *Ginsberg* v. *Burroughs Adding Machine Co.,* 204 Mich 130, call for a directed verdict in its favor, and sums its position this way:

"Even if, by a stretch of the imagination, it could be said the facts support an inference the gondola.

struck the trailer, the other explanations that the trailer either rolled into Kaminski directly or rolled into the side of gondola and caromed off into Kaminski are equally consistent. Permitting the jury to determine which explanation it preferred would result in a finding based on a guess. * * * Tossing a coin would be as fair and logical a method of deciding this case as permitting the jury to guess."

The trial judge carefully considered and denied defendant's aforesaid invocation. Considering previously-mentioned precepts we think he was right in so doing. He said:

"It cannot be said that the testimony produces ground for a legitimate inference that the plaintiff was struck by the trailer rolling down the incline inasmuch as the clanking or screeching noise on the side of the gondola car preceded the blow received on his right knee. There is no room for an inference that such clanking and scraping sound which preceded the striking of plaintiff could have been caused by the metal cart striking against plaintiff's body.

"That the testimony is productive of a reasonable inference that the trailer, rolling down the incline, struck the gondola car and bounced back against the plaintiff is vitiated by the established fact that the screeching noise that brought on the emergency signal and caused the prompt stopping of the train occurred at the precise point, the center of the gondola car, at its precise point of greatest overhang, at the precise moment that it would have to come down the incline at the precise rate of speed required to insure the contact. Such a combination of circumstance is possible but not probable. There is testimony that the train crew was obliged to stop trains on occasion to obtain clearance where objects were left on or near the tracks; there is no testimony that at any time any trailer was ever observed rolling down the grade, to come to rest at or near the crossing, or even that such an incident were possible experimentally. A logical and probable inference can

be drawn from the testimony that the trailer was near the track too close for clearance; that either the trailer was seen by the conductor in that position or that it was there to be seen and should have been seen by required care and watchfulness. That such inference is a legitimate one is somewhat supported by the conductor's own opinion given immediately after the accident and so reported by him at the time.

"Inasmuch as it was the conductor's duty to watch out for obstacles along the spur track, that he knew of the previous existence of these trailers in the close vicinity of the spur track, that he had a lantern with him that showed 25 to 40 feet in addition to the headlight of the Diesel, that he could see an unstated distance which was upwards of 5 feet beyond the left track, there was a question of fact for the jury as to whether or not the conductor should have seen the trailer, there having been nothing else in the area that could have come in contact with the gondola car except the trailer, which the conductor testified could have caused the scraping sound that he heard, and, seeing it, have taken precautions to avoid the accident."

The trouble with defendant's "other explanations" is the comparative improbability thereof. The first, that the trailer rolled directly into plaintiff absent contact with the train, is out of present question considering the quoted proof of auricular occurrences. The latter was no "din" of a large automobile plant, as defendant infers. It meant accident to conductor Miller. On acount thereof he gave a stop signal to the engineer which the latter executed promptly.

The other "explanation," that the trailer rolled into the gondola and caromed off against plaintiff's legs, is possible but unlikely. We note particularly the construction of the trailer. It has a single pivoting axle and tongue at the forward end, similar to the construction of a farm wagon. According to a

drawing received in evidence, the tongue rests on the ground when the trailer is not in use. No stays are provided for holding the tongue in an upright or fixed position. Accordingly, and if the trailer was in original poised position to roll down the incline, and if it did start with necessarily perfect timing and without proof or inference as to the cause of its start toward the ultimate point of collision, it is quite remarkable that the loose and uncontrolled tongue did not alter the course of travel, either by swinging or catching on the uneven surface as photographed, so that the trailer would end in some place or position other than the exact point of collision. Such point had to be between plaintiff—standing where he was to await passage of the train—and the northerly end of a nearby concrete retaining wall shown in the photographic exhibits. All in all, we are constrained to agree with the trial judge that the jury had a right to draw the same inference as was drawn by conductor Miller when he reported the accident—that the trailer was "parked too close to track" and that it was struck with result as claimed by plaintiff. This means that the jury of right could infer negligence from conductor Miller's failure to discover and act upon presence of the trailer at left trackside, and it means that the motion for directed verdict was properly denied.

*Second:* Error is assigned upon an obvious error of inadvertence which appears in the trial judge's charge. He told the jury:

"It is the law in Michigan, that if the plaintiff was guilty of any negligence which contributed to any extent or any degree to the causing the injury, then, the plaintiff may recover."

The court's charge, viewed as a whole, fairly and properly advised the jury that negligence of the defendant, and freedom from contributory negli-

gence on the part of the plaintiff, must be found in order to justify a verdict for the plaintiff. This question is consequently controlled by *Labar* v. *Crane,* 56 Mich 585. Of a similar error of inadvertence—that of instruction that probable cause could not be inferred from malice in an action for malicious prosecution—the Court said (p 589):

"This seems an evident inadvertence, but no one called the attention of the court to his error, and it is now relied upon for the reversal of the judgment. We cannot think anybody was misled; the error seems to have passed unnoticed at the time, and we may well assume that on both sides the parties either understood the judge to be giving the instruction requested, or they corrected the error in their own minds, and assumed that the jury understood the instruction as he intended it. We do not think the judgment should be reversed for this error."

Of a somewhat similar error, shown in *Robertson* v. *Hayes,* 261 Mich 200, 205, 206, we said:

"If appellant's counsel observed this slip of the trial court when charging the jury, surely they should have called his attention to the same in order that it might be corrected. On the other hand, if counsel did not notice the inadvertent mistake, it would seem rather farfetched to assume that the members of the jury heard and literally followed the charge and were misled thereby."

No reversible error appears. The judgment is therefore affirmed, with costs to plaintiff.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, and CARR, JJ., concurred.

BOYLES, J., took no part in the decision of this case.