Harry BATES, Plaintiff-Appellant and Cross-Appellee,

v.

R. D. WERNER COMPANY, Inc., Defendant-Appellee and Cross-Appellant.

Nos. 18871, 18872.

United States Court of Appeals Sixth Circuit.

Jan. 7, 1970.

Frances R. Avadenka, Pontiac, Mich., for Harry Bates.

Albert A. Miller, Detroit, Mich., for R. D. Werner Co., Garan, Lucow & Miller, Detroit, Mich., on brief.

Before WEICK, Chief Judge, and O'SULLIVAN and CELEBREZZE, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Plaintiff-appellant, Harry Bates, appeals from judgment for defendant-appellee, entered November 28, 1967, upon a jury verdict of no cause of action, returned in plaintiff's personal injury action against defendant R. D. Werner Company, Inc. The case was tried in the United States District Court for the Eastern District of Michigan, Southern Division. Michigan law controls this diversity action.

Plaintiff charged that the Werner Company was guilty of negligence and breach of implied warranty in the manufacture of a ladder. The ladder, with plaintiff on it, fell while he was using it in an effort to erect an antenna assembly on the roof of a house owned by a customer of plaintiff's employer. Defendant has cross-appealed, charging error in the District Judge's denial of its motion for a directed verdict.

Plaintiff assigns error in the District Judge's instructions, primarily his failure to tell the jury that contributory negligence is not a defense to breach of implied warranty. Defendant charges that neither plaintiff's own evidence nor that supplied by two expert witnesses provided any basis for a finding that defendant was guilty of negligence or breach of implied warranty. The District Judge's remarks evidenced his own impression that plaintiff's experts had not made out a case for the jury. He stated:

"  *   *   *  I have serious reservations about the testimony of both of those witnesses.  *   *   *  I have not seen an expert testify who had less foundation laid for his testimony than either one of these witnesses."

He reserved ruling on defendant's motion to strike the testimony of these experts until the close of proofs, but decided to submit the case to the jury. In denying plaintiff's motion for new trial, he took occasion to say:

"Furthermore, even if the Court did commit any error in the instructions, it was harmless error. The great weight of the evidence favored the defendant. For the Court to deny the motion for a new trial does not appear to the Court 'inconsistent with

substantial justice.' Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A. Miller v. Pacific Mutual Life Insurance Co., 17 F.R.D. 121 (W.D.Mich.1954). Affirmed, Pacific Mutual Life Insurance Co. v. Miller, 228 F.2d 89 [889] (Sixth Cir. 1955)."

We need not reach the question of the Court's instructions, satisfied that defendant was entitled to a directed verdict.

On February 6, 1965, plaintiff Bates, by trade a service man and installer of appliances, was directed by his employer to install a television antenna on the roof of a customer's house. The extension ladder used for that purpose had been purchased by the employer in 1964, and had been used on numerous occasions in the same activity. Plaintiff had used the ladder in this activity earlier on the day involved upon a taller house than the one involved here. No imperfections were exposed nor difficulties encountered in such use of the ladder.

Plaintiff testified that he began the operation which ended in his fall by placing the base of the ladder a proper distance from the house, first using a claw hammer to chip down into the frozen ground to establish a good base for it. He then extended the ladder to approximately 24 feet and climbed the ladder to test its steadiness. He then climbed it again to the second, third or fourth rung from the top to get a look at the area where the antenna was to be installed. The top end of the ladder was placed on the gable of the house with the tips extending over the gable. It was Bates' plan to install the base of the antenna astraddle the gable roof of the house. After such survey, he climbed down and put the tools he needed into his coat pocket and picked up a five-foot base of the television antenna. The antenna to be installed "consisted of a rotor and a large antenna system so they could call in stations from quite some distance." Taking the folded tripod base in one hand, plaintiff climbed to the top of the ladder, stopping at the third or fourth rung from the top. He opened the tripod legs of the base and placed them on the gable roof, two of the legs on one side and one on the other. Then he picked up the antenna base with both hands and moved it three or four feet along the peak of the gable. Both of his arms were then off the ladder, holding and pushing the antenna base. This operation required him to reach further with one arm than the other and this reaching "might have made" him "raise one foot off." Plaintiff testified that he then heard a cracking sound—like a rifle shot. He was unable to tell the direction from which this sound had come. The ladder lurched to one side and plaintiff was thrown off balance. He said his foot went through the ladder and he and the ladder fell away from the house. He testified that his foot remained caught in the ladder and he apparently never caught hold of the side of the ladder and was upside down during the course of the fall. He fell on the ladder when it reached the ground. After the fall the tops of the side pieces of the ladder were broken off a few feet from the top, and some bulging or bending out on the side rails of the ladder was evident. At trial these bulgings and bendings were also described as deformations.

To make out his claim of negligence or breach of warranty on the part of defendant, plaintiff used two expert witnesses. They gained varying impressions from their examination of the ladder after the accident. One was of the opinion that the tops of the side pieces of the ladder broke while they were still against the house. The other was of the opinion that the tops of the side pieces broke when the ladder, during the course of the fall, struck the side of the house next door to the one where plaintiff had been working. Without further detailing the testimony of these experts, both concluded that one or the other of the alleged "deformations" occurred or developed while plaintiff was upon the ladder. From this premise, they concluded that "disturbances" of the metal in the side pieces and the rungs of the ladder at the site or sites of the deformations accounted for the cracking or "pistol shot"

sound heard by Bates just as he began to fall and also accounted for Bates losing his balance and the ultimate fall of the ladder.

The experts apparently reasoned as follows: (1) the ladder fell; (2) examination of the ladder after the fall disclosed certain deformations; and (3) therefore, the birth of one or more of these deformations must have preceded the beginning of, and accounted for the fall. Neither of the experts asserted that the fall itself could not have accounted for all the damage which they observed. Neither of the experts made any metallurgical tests to discover whether the metal in the ladder contained any defect which would account for its sudden deformation. Neither challenged the design or structural scheme of the ladder. Plaintiff submitted no other "evidence" that any such deformations were in the ladder prior to the time it fell with Bates. Therefore, in our view there was no evidence from which a jury could find that plaintiff Bates' fall resulted from any defect in the manufacture or design of the ladder.

In the case of Accetola v. Hood, 7 Mich. App. 83, 151 N.W.2d 210 (1967), the Michigan Court of Appeals was dealing with a fall from a ladder where the injured plaintiff, as here, sought recovery from the manufacturer upon claims of negligence and breach of implied warranty. In affirming a directed verdict for defendant, the Court succinctly stated that the obligation of a plaintiff in such a case as the one at bar is to,

" * * * prove a defect in the article manufactured attributable to the manufacturer thereof and a causal connection between that defect and the injury or damage of which he complains." 7 Mich.App. at 88, 151 N.W.2d at 213.

Dealing generally with the subject, the Supreme Court of Michigan stated in Kaminski v. Grand Trunk Western Railroad Co., 347 Mich. 417, 79 N.W.2d 899 (1956):

"As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only." 347 Mich. 417, 79 N.W.2d 899 (1956).

Plaintiff failed to meet these burdens. We are of the opinion that a verdict should have been directed in favor of defendant. Therefore, the judgment entered upon the jury's verdict shall stand.

Judgment affirmed.