*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JILL WHITE,

          Plaintiff-Appellant,

v

DIVA NAILS, LLC, and NAILS STUDIO,

          Defendants-Appellees.

UNPUBLISHED
June 25, 2020

No. 347847
Wayne Circuit Court
LC No. 17-012539-NO

Before: STEPHENS, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants Diva Nails, LLC, and Nails Studio (collectively, defendants). We reverse.

## I. BACKGROUND

On April 19, 2016, plaintiff claims to have received a manicure at Diva Nails in Livonia. She testified that during the manicure, the nail technician cut the skin on plaintiff's right thumb with cuticle clippers, breaking the skin and causing a small bleed. She alleged that the technician, who was not wearing gloves, did not disinfect the cut or ask plaintiff to wash her hands before finishing plaintiff's manicure. On April 23, 2016, plaintiff visited Nails Studio in Howell, Michigan for a polish change[1] and a pedicure. The technician was identified during discovery. According to plaintiff, that technician reopened the cut received at Diva Nails on plaintiff's right thumb with cuticle clippers, causing her wound to bleed and did not use any disinfectant on the cut or ask the Plaintiff to wash her hands. The technician denies that the wound was re-opened but admits that she wore one glove on her left hand. The technician from Nails studio denied being diagnosed with any communicable disease,

---

[1] A polish change is different from a manicure because, generally, a polish change only involves removing the current nail polish and applying a new nail polish.

On April 26, 2016, plaintiff went to Livonia Urgent Care because the cut on her right thumb was inflamed and painful. Plaintiff was diagnosed with a bacterial infection and given antibiotics. After another visit to Livonia Urgent Care and two visits to St. Joseph Mercy Livingston Hospital, plaintiff was diagnosed with Herpes Whitlow and prescribed antiviral medication. Herpes Whitlow is a type of the Herpes Simplex Virus. The Herpes Simplex Virus is broken down into two types: Herpes Simplex 1 and Herpes Simplex 2. Herpes Simplex 2 generally presents in the form of genital herpes, whereas Herpes Simplex 1 usually presents in the form of oral infections such as cold sores. While 50% to 80% of the general population have Herpes Simplex 1, an "extremely low" percentage of the population has Herpes Whitlow. The incubation period for the Herpes Simplex Virus is 1 to 26 days. Herpes Whitlow can be passed through the skin, saliva, from oral or anal sex, and by touching an open wound. Once a person contracts Herpes Whitlow, that person becomes a carrier of the virus for the rest of her life. A carrier of Herpes Whitlow can be asymptomatic her entire life and not know that she has the virus. Only a blood test can definitively show that a person is a carrier of Herpes. Plaintiff experienced an outbreak on September 1, 2016, but has not experienced anymore outbreaks since then.

Plaintiff's expert witness, Dr. Michael McIlroy, testified that plaintiff suffered a "very severe outbreak" and "will be considered infectious to others even when she does [not] have any active lesions." In Dr. McIlroy's opinion, plaintiff "definitely" contracted Herpes Whitlow at one of the nail salons. Dr. McIlroy could not determine whether plaintiff contracted the virus from Nails Studio or Diva Nails, but the timing of plaintiff's outbreak and the location of the nail injury indicated that the likelihood that plaintiff contracted the virus from one of the nail salons is "extremely high." As to how plaintiff would have contracted the virus, Dr. McIlroy testified as follows:

> At one of the salons, one of the workers had the herpes simplex [virus], more likely than not, and through the nail injury, transmitted their virus or the virus on the instrument to [plaintiff] and the cutting of her finger made it even a higher likelihood that she would acquire [H]erpes [W]hitlow because of the injury.

No other expert witness opined as to the origin or cause of Herpes Whitlow.

Plaintiff filed a complaint against defendants, alleging negligence under an alternative-liability theory. After discovery both defendants filed motions for summary disposition under MCR 2.116(C)(10), arguing that alternative-liability theory was no longer viable in Michigan because the 1995 tort reform abolished joint liability and that plaintiff could not prove causation. The trial court did not determine whether the 1995 tort reform and abolition of joint liability eliminated alternative liability in Michigan, but concluded that summary disposition was warranted, nonetheless, because plaintiff could not demonstrate causation. According to the trial court, plaintiff could have contracted Herpes Whitlow from anywhere, and therefore, summary disposition was warranted. Plaintiff's motion for reconsideration was denied, and this appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews a trial court's decision on a motion for summary disposition de novo. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). The trial court granted

defendants' motions for summary disposition under MCR 2.116(C)(10). "[A] motion under MCR 2.116(C)(10) tests the *factual sufficiency* of a claim." *El Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When considering a motion brought under MCR 2.116(C)(10), the trial court must review the evidence in a light most favorable to the nonmoving party. *Id*. Summary disposition is only appropriate when there is no genuine issue of material fact. *Id*., citing *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761. Issues of statutory interpretation are reviewed de novo. *Denney v Kent Co Road Comm*, 317 Mich App 727, 730; 896 NW2d 808 (2016).

## III. ANALYSIS

Plaintiff argues that the trial court erred in granting defendants' motion for summary disposition because alternative-liability theory is still viable in Michigan and there is a genuine issue of material facts as to whether either defendant caused her injury. We agree.

## A. ALTERNATIVE-LIABILITY THEORY

To establish a prima facie case of negligence, a plaintiff must prove the following: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). The dispute in this case centers on the causation element. At a minimum, the applicable threshold evidentiary standard to a plaintiff's proof of factual causation in negligence cases is that a causation theory must have some basis in established fact. "However, a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported, is at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Kamanski v Grand Trunk W.R. Co.*, 347 Mich. 417, 422, 79 N.W. 2d 899 (1956). Plaintiff concedes that she is unable to identify the actor who caused her injury, but contends that, under alternative-liability theory, she can satisfy the causation element.

Under a theory of alternative liability, a plaintiff can overcome the causation element and shift the "burden of apportioning damages" by holding the defendants jointly and severally liable, as explained in the seminal case concerning alternative-liability theory in Michigan, *Abel v Eli Lilly & Co*, 418 Mich 311, 317; 343 NW2d 164 (1984). *Abel* was a products liability case that involved the daughters (and their spouses) of women who had taken the drug DES, a synthetic estrogen product, during their pregnancies. Because the plaintiffs were unable to identify the manufacturer of the drug to which they were exposed, the plaintiffs sued all manufacturers of the drug by relying on alternative-liability theory. *Id*. at 318. By relying on this doctrine, the plaintiffs sought to "circumvent the traditional tort element of causation in fact" and hold all of the manufacturer-defendants jointly and severally liable. *Id*. The Supreme Court ruled in favor of the plaintiffs, holding that the plaintiffs who were unable to identify the drug manufacturer that harmed them . . . "may take advantage of the burden-shifting feature of the alternative[-]liability theory to withstand summary judgment on the causation issue of the negligence claims." The Supreme Court described the legal doctrine as follows:

Also called "clearly established double fault and alternative liability," this procedural device shifts the burden of proof on the element of causation in fact to the defendants once an innocent plaintiff demonstrates that all defendants acted tortiously, but only one unidentifiable defendant caused plaintiff's injury. If the defendants cannot meet this burden and exculpate themselves, joint and several liability will be imposed. [*Id.* at 325 (citation and footnote omitted).]

When the Supreme Court decided *Abel*, multiple tortfeasors that produced a single, indivisible injury were held jointly and severally liable. *Gerling Konzern Allgemeine Versicherungs AG v Lawson*, 472 Mich 44, 49; 693 NW2d 149 (2005). "This meant that where multiple tortfeasors caused a single or indivisible injury, the injured party could either sue all tortfeasors jointly or he could sue any individual tortfeasor severally, and each individual tortfeasor was liable for the entire judgment, although the injured party was entitled to full compensation only once." *Id.* The right of contribution—an equitable remedy available to concurrent tortfeasors—then allowed one tortfeasor to recover among or between other tortfeasors. *Id.* at 50. The principle purpose of " 'contribution' was to mitigate the unfairness resulting to a jointly and severally liable tortfeasor who had been required to pay an entire judgment in cases in which other tortfeasors also contributed to an injury." *Id.* at 50.

In 1995, the Legislature enacted tort reform measures, 1995 PA 161 and 1995 PA 249, and limited the availability of joint and several liability. The Legislature enacted several statutory provisions specifically designed to allocate fault for damages among multiple tortfeasors by abolishing joint and several liability is most cases. *Kaiser v Allen*, 480 Mich 31, 37; 746 NW2d 92 (2008). The tort reform statutes applicable in this case are MCL 600.2956, MCL 600.2957(1), MCL 600.2960(1), and MCL 600.6304.

MCL 600.2956 provides, in relevant part:

Except as provided in section 6304, in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint.

MCL 600.2957(1) provides:

In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

MCL 600.2960(1) provides:

The person seeking to establish fault under sections 2957 to 2959 has the burden of alleging and proving that fault.

MCL 600.6304 provides, in relevant part:

-4-

(1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:

(a) The total amount of each plaintiff's damages.

(b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff and each person released from liability under section 2925d, regardless of whether the person was or could have been named as a party to the action.

* * *

(4) Liability in an action to which this section applies is several only and not joint. Except as otherwise provided in subsection (6), a person shall not be required to pay damages in an amount greater than his or her percentage of fault as found under subsection (1). This subsection and section 2956 do not apply to a defendant that is jointly and severally liable under section 6312.

* * *

(8) As used in this section, "fault" includes an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party.

Defendants contend that alternative-liability theory is no longer viable in Michigan because joint and several liability is critical to the doctrine's application and was abolished by the 1995 tort reform. Whether the 1995 tort reform expressly abolished joint liability and effectively eliminated alternate liability involves, in part, statutory interpretation. In *Lamp v Reynolds*, 249 Mich App 591; 645 NW2d 311 (2002), this Court stated the following with respect to statutory interpretation:

> Well-established principles of statutory interpretation direct our attempt to give effect to the Legislature's intent. This Court first looks to the specific language of the statute to discern the Legislature's intent. We must presume that every word, phrase, and clause in the statute has meaning and avoid any construction that would render any part of the statute surplusage or nugatory. If the plain and ordinary meaning of the statute's language is clear, judicial construction is inappropriate. [*Lamp*, 249 Mich App at 597 (citations omitted).]

Defendants are correct in that, except for cases where it was expressly preserved by statute,[2] the liability of each tortfeasor is "several only" and "not joint." MCL 600.2956; MCL 600.6304(4). However, abolition of joint liability does not preclude a plaintiff from invoking alternative liability to seek recovery when she cannot identify which of multiple tortfeasors caused her injury. Each tortfeasor is now liable only for the portion of the total damages that reflect that tortfeasor's percentage of fault. *Kaiser*, 480 Mich at 37. Rather than hold multiple tortfeasors liable for the entire judgment, i.e., jointly liable, the trier of fact will determine each tortfeasor's proportion of fault and extent of liability. MCL 600.2957(1); MCL 600.6304(1)(b). Even if the defendants are unable to exonerate themselves—after the burden of proving factual causation has shifted—defendants will only be liable for their proportion of fault, which the trier of fact will determine. MCL 600.2957(1); MCL 600.6304(1)(b). Simply, alternative liability is still feasible even though only several liability is available to a plaintiff in a case such as this one.

Alternative liability was not available to a plaintiff *because* multiple tortfeasors could be held jointly and severally liable; it was available because multiple tortfeasors acted wrongfully, and the injured plaintiff is unable to establish which of the tortfeasors actually caused the injury. *Abel*, 418 Mich at 334. Alternative-liability theory focuses on factual causation, not how, or in what proportions, the defendants will be held liable. The underlying principle of alternative liability is "to prevent the injustice of allowing proved wrongdoers to escape liability for an injury inflicted upon an innocent plaintiff merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm." *Id*. at 327 (citation and quotation marks omitted). Even without joint liability, the application of alternative liability fulfills the Legislature's intent to require a plaintiff in a tort action with multiple defendants to establish sufficient facts that would enable the fact-finder to discern each person's liability in direct proportion to their percentage of fault.

While alternative-liability theory does not relieve the plaintiff of the burden of establishing proximate causation, i.e., that defendants' actions were the natural, probable, foreseeable causes of plaintiff's contraction of Herpes Whitlow. Accordingly, a plaintiff is still required to present sufficient facts proving duty, breach, proximate causation, and damages.

This understanding of alternative-liability theory is consistent with the aforementioned tort reform statutes. MCL 600.2957(1) requires the trier of fact to determine the liability of each person, which must be in direct proportion to the person's percentage of fault. "Fault" is defined by MCL 600.6304(8) as "an act, an omission, [or] conduct . . . that is a proximate cause of damage sustained by a party." Accordingly, the plaintiff is still required to prove the defendants' fault, i.e., the defendants' acts or omissions that were a proximate cause of her injury. Notably, the plaintiff is not required to prove percentage of fault—that is a determination made by the trier of fact. MCL 600.6304(1)(b). Once a plaintiff proves fault on the part of the defendants, the trier of

_____

[2] MCL 600.6304(6) allows joint and several liability in certain medical malpractice cases. MCL 600.6312 allows joint and several liability in tort cases in which a defendant's act or omission is (1) "a crime, an element of which is gross negligence, for which the defendant is convicted, " or (2) "a crime, an element of which is the use of alcohol or a controlled substance, for which the defendant is convicted and" that is a violation of one of certain enumerated laws.

fact assesses the defendants' respective degree of fault before allocating liability in direct proportion to the parties' percentage of fault. MCL 600.2957(1); MCL 600.2960(1); MCL 600.6304(1)(b).

Cases decided after 1995 have yet to disavow alternative-liability theory, although no published case has explicitly addressed the continued viability of the doctrine. In *Kaiser*, 480 Mich at 37, the Supreme Court recognized alternative-liability theory even though it did not apply the doctrine. In *Gelman Sciences, Inc v Fidelity & Cas Co of New York*, 456 Mich 305, 325 n 12; 572 NW2d 617 (1998), overruled on other grounds by *Wilkie v Auto-Owners Ins Co*, 469 Mich 41 (2003), the Supreme Court acknowledged that *Abel* and alternative-liability theory are "instructive in demonstrating how courts can employ fair rules to alleviate an impossible burden when justice requires." However, the Supreme Court did not apply the alternative-liability theory at all. Consequently, the mention of *Abel* by the Supreme Court is arguably dicta and therefore not binding authority because it was a judicial comment unnecessary to the decision in the case. *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014).

Defendants rely heavily on *Napier v Osmose, Inc*, 399 F Supp 2d 811, 820 (WD Mich, 2005), a federal case that addressed the application of a concert-of-action theory and alternative-liability theory. The United States District Court for the Western District of Michigan concluded that that joint and several liability is a "key premise of alternative-liability theory," and that "allowing an alternative[-]liability theory to impose liability without proof of causation in this case would contradict the Michigan legislature's intent to bar joint and several liability except where that body clearly expressed an intent to the contrary." *Id*. at 820. *Napier* may be persuasive and support defendants' position, but it is not binding on this Court. See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004) ("Although lower federal court decisions may be persuasive, they are not binding on state courts.").

Moreover, despite the abolition of joint liability in *Napier*, the 1995 tort reform does not mention alternative liability nor imply any conflict with existing applicable statues. Finally, the Supreme Court and this Court have recognized alternative liability as still viable in Michigan.

## B. APPLICATION OF ALTERNATIVE LIABILITY

Having concluded that alternative-liability theory is still viable in Michigan, we conclude that the trial court erred when it granted defendants' motions for summary disposition because plaintiff presented sufficient evidence to create a genuine issue of fact regarding causation. For alternative liability to be applicable, the plaintiff must demonstrate three elements: (1) all the defendants acted tortuously, (2) the plaintiff was "harmed by the conduct of one of the defendants," and (3) the plaintiff, through no fault of her own, is unable to identify which actor caused the injury. *Abel*, 418 Mich at 331-332. The second element requires plaintiff to "make a genuine attempt to locate and identify the tortfeasor responsible for her injury" and "bring before the court all the actors who may have caused the injury in fact." *Id*. "The genuineness of the attempt to do so is to be measured by the traditional due diligence standard, and it is the trial court's duty to ascertain whether a duly diligent effort on the part of a plaintiff has been made." *Id*. at 332. Once a plaintiff has met all three requirements, she is relieved "of the traditional burden of proof of causation in fact."

In this case, the facts alleged by plaintiff and contained in the record compromise evidence from which a reasonable jury could conclude that both defendants acted tortiously. "[E]very person who engages in the performance of an undertaking has an obligation to use due care or to act so as not to unreasonably endanger the person or property of another." *Jahnke v Allen*, 308 Mich App 472, 475; 865 NW2d 49 (2014) (citation and quotation marks omitted). According to plaintiff, technicians from both salons cut the skin on her right thumb and failed to treat the cut with disinfectant or soap. Neither technician wore gloves on both hands or asked plaintiff to wash her hands after she was cut. Dr. McIlroy testified that the technicians improperly placed the burden on plaintiff to clean a wound that they caused. Defendants negligently exposed plaintiff to a communicable disease by failing to ensure that their employees wear gloves, do not expose clients to contagious viruses, adequately treat any open wounds, and otherwise work in a hygienic manner.

The record demonstrates that plaintiff made a genuine attempt to locate and identify the tortfeasor that harmed her and brought before the trial court all the actors who may have caused the injury in fact. Plaintiff visited Diva Nails on April 19, 2016, and Nails Studio on April 23, 2016. By April 26, 2016, plaintiff sought medical care for her right thumb, which was the exact location where employees from both salons cut her. By May 1, 2016, plaintiff was diagnosed with a rare form of the Herpes Simplex Virus. The timing of plaintiff's injury in relation to her visits to the nail salons and the location of the injury indicated an "extremely high" likelihood that plaintiff contracted the virus from one of the nail salons. Dr. McIlroy testified that he was 99% certain that Diva Nails or Nails Studio was responsible for her injury. Dr. McIlroy's testimony demonstrates that plaintiff contracted Herpes Whitlow from one of the two nail salons, and therefore, all possible actors who may have caused plaintiff's injury were brought before the court.

Plaintiff, through no fault of her own, is unable to identify which actor caused her injury. The technician from Nails Studio states that she has never been diagnosed with any form of the Herpes Simplex Virus. However, Herpes Whitlow can be asymptomatic and thus undetectable unless a blood test is performed. In addition, whether or not plaintiff's technician at Nails Studio had the virus does not necessarily mean that Nail Studio or Diva Nails did not cause plaintiff's injury. According to Dr. McIlroy, plaintiff could have contracted the virus at one of the salons, from her technician or from a worker transmitting the virus on the instrument used when plaintiff was cut. Thus, the injury making it even a higher likelihood that she would contract Herpes Whitlow. Furthermore, although Dr. McIlroy could not determine which nail salon passed the virus to plaintiff, he was 99% certain that Diva Nails or Nails Studio caused plaintiff's injury. This is likely because of the fact that plaintiff visited two nail salons a few days apart, which was within the virus's incubation period, and plaintiff's outbreak did not fully manifest until a few days later. Moreover, the actions of the technicians at defendants' salons were nearly identical. Both technicians failed to wear gloves on both hands, cut plaintiff's right thumb in the same location, failed to disinfect the cut, and failed to ask plaintiff to wash her hands.

## IV. CONCLUSION

Alternative-liability theory is applicable to this case because plaintiff can demonstrate the three threshold requirements. Accordingly, plaintiff is relieved of the burden of proving causation in fact, which now shifts to defendants. Plaintiff has demonstrated an inability to identify the nail salon which harmed her and may benefit from "the burden-shifting feature of alternative[-]liability theory to withstand summary [disposition] on the causation issue of the negligence claim[]." *Abel*,

418 Mich at 339. As stated above, plaintiff is still obligated to present evidence proving all other elements of negligence, including proximate causation.

Moreover, plaintiff has presented substantial evidence from which a jury may conclude that, more likely than not, she would not have contracted Herpes Whitlow but for defendants' conduct. The trial court ignored Dr. McIlroy's expert testimony that plaintiff contracted Herpes Whitlow from one of the two nail salons and that both defendants acted negligently. While 50% to 80% of the population have Herpes Simplex 1, the trial court was incorrect in determining that Herpes Whitlow is common and thus there was no way to determine where plaintiff contracted the virus. To the contrary, Herpes Whitlow is very rare and is much more difficult to pass from one individual to another. The trial court decided a fact that can only be resolved by the jury. Thus, summary disposition was inappropriate.

We reverse the trial court's order granting defendants' motions for summary disposition and remand for further proceedings. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto