*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

MARK GOSS,

        Plaintiff-Appellee,

v

DEPARTMENT OF NATURAL RESOURCES,

        Defendant-Appellant.

UNPUBLISHED
May 9, 2024

No. 364150
Court of Claims
LC No. 19-000022-MZ

---

MARK GOSS and CHRISTY GOSS,

        Plaintiffs-Appellants,

v

ESTATE OF ROY LEE PEDERSON,

        Defendant-Appellee.

No. 364167[1]
Court of Claims
LC No. 21-000076-MZ

---

Before: RICK, P.J., and JANSEN and FEENEY, JJ.

FEENEY, J. *(concurring in part and dissenting in part)*

I concur with the majority that the Court of Claims correctly determined that the Pederson Estate was entitled to summary disposition in the absence of gross negligence. I respectfully disagree, however, with the majority's conclusion that "the lack of data available to all of the testifying witnesses results in opinions that are too speculative to establish a genuine issue of material fact" of negligence by the Department of Natural Recourses (DNR) and would affirm the denial of summary disposition to the DNR. Therefore, I must dissent.

-1-

The DNR argues that, even under a negligence standard, the Court of Claims erred by denying its motion for summary disposition because Goss cannot establish a question of fact on negligence. Specifically, the majority concludes that Goss cannot establish the element of causation. I disagree.

The DNR relies on the longstanding principle that negligence cannot be presumed from the bare fact of the accident. *Werbowlsky v Ft Wayne & East R Co*, 86 Mich 236, 239; 48 NW 1097 (1891). Goss relies on another longstanding principle that "it is the motorist's duty in the use and operation of his automobile to exercise ordinary and reasonable care and caution, that is, that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956).

Circumstantial evidence may be used to establish negligence, which can be inferred from the facts and circumstances of the case. *Spiers v Martin*, 336 Mich 613, 616; 58 NW2d 821 (1953). When there are no eyewitnesses to an accident, the plaintiff cannot rely on hypothetical scenarios to support their claims. *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). A case may be submitted to the trier of fact in the absence of eye witnesses when, on the basis of circumstantial or other evidence, the jury could infer a "logical causal relationship between the defendant's negligence and the plaintiff's injuries." *Id*. at 169. After the plaintiff has presented evidence to give rise to a question of fact, reasonableness is a question for the trier of fact. *Riddle v McLouth Steel Prods Co*, 440 Mich 85, 96; 485 NW2d 676 (1992). See also *Case v Consumers Power Co*, 463 Mich 1, 7; 615 NW2d 17 (2000) ("Ordinarily, it is for the jury to determine whether a defendant's conduct fell below the general standard of care.").

Regarding which party had the right of way in the intersection, the parties appear to agree that Pederson was required to stop and ensure that the intersection was clear no matter the situation, and Goss was only required to stop if there were cross-traffic present in the intersection. Goss was therefore the "favored driver" in the situation. The Michigan Supreme Court has explained that

> the favored driver [is] entitled to assume . . . that his right of way would not be contested by a subordinate driver. He was entitled to rely upon this assumption until it became clear to him (or, until, as a reasonable man, considering pertinent surrounding circumstances of traffic and terrain, it should have been clear to him) that a subordinate driver was going to challenge or obstruct his right of way. At this point his duty to attempt to avoid the impending collision began. [*McGuire v Rabaut*, 354 Mich 230, 236; 92 NW2d 299 (1958).]

With this legal framework in mind, I conclude that Goss has presented sufficient evidence to establish a question of fact regarding negligence. As the Court of Claims recognized, the facts are limited by Goss's memory loss, Pederson's death, the destruction of much of the physical evidence during the fire, and the lack of any eyewitnesses. But Goss has presented more than the mere fact of the accident to support his negligence theory.

Corey Butcher, Pederson's supervisor, testified that it was well known that snowmobiles would ride down Trail 8 at any speed, and so it was important that the Gator come to a complete stop at the stop sign before crossing the trail. He explained that it was necessary to inch the Gator up toward the intersection and to look both ways to ensure that a snowmobile was not coming

down the trail. Pederson, an experienced trail groomer, was expected to determine whether it was safe to cross before proceeding into the intersection. The need for caution was particularly true considering that Pederson was carrying fuel in the Gator.

The accident investigator, Sergeant DeShano, concluded that the accident occurred at a high rate of speed. There were visibility issues due to the woods in the area. This would have required Pederson to pull the Gator into the intersection by at least 2 feet for a clear view of the trail. Sergeant DeShano opined that Pederson failed to yield the right-of-way.

Most importantly, Goss has presented expert evidence on the cause of the accident. His accident-reconstruction expert, Timothy Robbins, performed a reconstruction using photographs, measurements, and other data to determine the speed at impact. Robbins was able to use the data that Savage provided to limit the possibilities to three scenarios,[2] all of which implicate Pederson as having entered the intersection first. In each scenario, Goss, who Robbins testified was traveling 51 miles per hour at impact, would not have had time to avoid the impact. According to Robbins, he admitted that "I—I don't know what truly happened there. All I can tell you is that I have the three scenarios, and if [Pederson] did not stop, there was not enough time [for Goss] to perceive and react, and if [Pederson] did stop, then there was time to perceive and react but not enough to stop before the impact." Robbins made it clear that he was not assuming; rather, he used acceleration factors, friction coefficients, drag factors, inline momentum formulas, post-crash travel distance and other "reliable scientific accident reconstruction principles" to determine that the perception-reaction time for Goss to react to the Gator on the trail. Robbins' testimony shows that there is "more than a mere possibility that unreasonable conduct of the defendant caused the injury." *Skinner*, 445 Mich at 165. Indeed, as the trial court observed:

> Our Supreme Court has explained that proof of negligence does not require direct evidence such as would be supplied by an eyewitness to an event . . . .
>
> * * *
>
> Put even more elegantly by Chief Justice Thomas M Cooley: "Negligence, like any other fact, may be inferred from the circumstances, and the case may be such that, thought there be no positive proof that defendant has been guilty of any neglect of duty, the inference of negligence would be irresistible." *Alpern v Churchill*, 53 Mich 607, 613; 19 NW 549 (1884).

---

[2] Robbins considered three scenarios based on videos that Savage provided with the Gator traveling at 12 miles per hour, 8 miles per hour and then proceeding onto the trail. Robbins testified in his deposition to each of the three scenarios he reconstructed: (1) the Gator did not stop and rolled through the stop sign at 8 miles per hour, which would take about 1.1 seconds to travel 12.8 feet onto the snowmobile trail; (2) the Gator did not stop and rolled through the stop sign at 12 miles per hour, which would take even less time to arrive 12.8 feet onto the center of the trail; and (3) the Gator stopped and accelerated with a nominal drag factor of .10 that would take 2.82 seconds to go 12.8 feet forward to the area of impact. Robbins testified that with no evidence of Goss breaking, there was no time for Goss to perceive and react to the Gator crossing the trail.

Moreover, the Supreme Court in *Skinner,* 445 Mich at 168-169, referenced *Kaminski v Grand Trunk W R Co*, 347 Mich 417, 420; 79 NW2d 899 (1956), as an example of "the level of circumstantial evidence needed to adequately establish causation." That case involved a train colliding at night with a trailer next to the tracks and Kaminski, who was standing by the tracks, was "struck by something he could not see," and ended up on top of the trailer. *Skinner,* 455 Mich at 168. The Supreme Court found "circumstantial proofs could facilitate a jury in inferring a logical causal relationship between the defendant's negligence and the plaintiff's injuries." *Id.* at 169. *Kaminski* made it clear that "[i]n all cases of doubt, the proper method is to submit the evidence to the jury, under proper caution and instructions, to determine whether, from the facts as they shall find them established by the evidence, negligence ought to be inferred." *Kaminski*, 347 Mich at 420 (citation and emphasis omitted).

The DNR has identified issues with Robbins's analysis, such as certain assumptions he made, but those issues would go to the weight of his testimony rather than its admissibility. The DNR points out that, under *Skinner*, 445 Mich at 173, " 'there must be facts in evidence to support the opinion testimony of an expert.' " (Quotation marks and citation omitted.) But Robbins did not assume Goss's speed prior to and at the point of impact. He calculated it.[3] He then determined three possible scenarios based on his speed calculations, his reconstruction, and his experience. These scenarios represent the spectrum of possible events and all point to Pederson's negligence. That is, while exactly what happened may be unknowable, what is knowable is that the accident could only have happened due to Pederson's negligence. Robbins's opinion is based on more than mere speculation. Ultimately, Robbins's credibility and the issue regarding which expert to believe are issues for the trier of fact to decide. See *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d 723 (2008).

The DNR also points to Butcher's testimony that Pederson would exercise caution when operating the Gator. And the DNR's expert, Carl Savage, Jr., opined that the Gator either slowed or stopped in the intersection. The DNR also hypothesizes that Pederson could have experienced an emergency while operating the Gator. This is even more speculative than Robbins's testimony. These arguments do nothing more than create a factual dispute about whether Pederson breached his duty of ordinary care and whether Pederson or Goss caused the accident. At trial, the DNR will have the opportunity to present its version of the facts, which includes that the police made a rash decision about fault and that Goss had the ability to avoid the accident by slowing down in the intersection.

The majority equates the testimony in this case to that in *Skinner* and finds that Robbins's expert testimony presents essentially "purely hypothetical" situations. The plaintiffs in *Skinner* claimed that "the Square D switch was defectively designed because it had a large 'phantom zone' that sometimes made the switch appear to be 'off' when it was actually 'on.' Plaintiffs assert that this defect proximately caused Mr. Skinner's death" when he disconnected alligator clips from a motor that ran a tumbling machine. *Skinner*, 445 Mich at 158. There was no one present immediately before the accident in *Skinner*, so the Supreme Court recognized "that plaintiffs may

---

[3] Both Robbins and Savage, defendant's accident reconstruction expert, estimated Goss' speed on the trail at approximately 62 miles per hour.

utilize circumstantial proof to show that the requisite causal link between the defect and an injury in products liability cases," but "the mere happening of an unwitnessed mishap neither eliminates nor reduces a plaintiff's duty to effectively demonstrate causation." *Id.* at 163 (citations omitted). "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Id.* at 164.

Indeed, in *Skinner*, 445 Mich at 173, the Supreme Court found that "there must be facts in evidence to support the opinion of an expert," and Goss has submitted Robbins's testimony and calculations here. The Court of Claims correctly concluded that Goss had provided enough evidence to establish a question of fact for trial because reasonable minds could infer that, but for Pederson's negligent operation of the Gator as evidenced by Robbins's testimony, the accident would not have occurred. The majority compares this case to *Jordan v Whiting Corp*, 396 Mich 145; 240 NW2d 468 (1976). But this case is closer to *Kaminski* than *Jordan* as Robbins's testimony was not "based upon only hypothetical situations" but on a range of scenarios to demonstrate a legitimate causal connection between Pederson's actions and Goss's injuries. *Skinner*, 445 Mich at 168, 173. In *Jordan*, the "experts' testimony did not corroborate with any established facts," which supported the finding of a directed verdict, not summary disposition. *Skinner*, 445 Mich at 173, fn 17.

Notably, the majority also posits that Goss had ample space to avoid the accident ("The evidence established that the Gator was in the middle of the intersection when the accident occurred, leaving enough room for the snowmobile to maneuver around it.") I disagree that the evidence established this fact; if nothing else, the majority presumes a conclusion that is best left to the trier of fact. I also hesitate to conclude that, in the absence of eye witnesses or in the wake of destroyed evidence following an accident such as this, accident reconstruction experts can only speculate and cannot create a genuine issue of material fact. It is for the jury to decide whether to believe Goss's expert opinion. It is an analysis based upon the available evidence and scientific principles. The majority's attempt to dismiss it as more speculation and guess work is a mere attempt to gavel a Square-D peg into a round hole. For these reasons, I would affirm the Court of Claims' denial of summary disposition.

I would affirm.

/s/ Kathleen A. Feeney